**Tab 45**

**PAX LEGAL, LLC**
By:  Neil M. Hilkert, Esq.
    Lida L. Bonner, Esq.
Attorney I.D. Nos. 44696 & 83985
600 W. Germantown Ave.
Suite # 400
Plymouth Meeting, PA 19462
(610) 940-1663 TEL
*neil@paxlegalllc.com*
*lida@paxlegalllc.com*

*Counsel for Plaintiff*
Edwin León



| | | |
|---|---|---|
| **EDWIN LEÓN** | : | **COURT OF COMMON PLEAS** |
| **622 Fulton St.** | : | **PHILADELPHIA COUNTY, PA** |
| **Conshohocken, PA 19428** | : | |
| | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | **CASE ID NO. 230400452** |
| v. | : | |
| | : | |
| **NEHAMA HANOCH** | : | |
| **101 W. 10ᵗʰ St.** | : | |
| **Wilmington, DE 19801** | : | |
| | : | |
| **and** | : | |
| | : | |
| **CHEYENNE GOODMAN** | : | |
| **101 W. 10ᵗʰ St.** | : | |
| **Wilmington, DE 19801** | : | |
| | : | : |
| | : | |
| *Defendants* | : | |

## FIRST AMENDED COMPLAINT

Plaintiff, Edwin León, ("Plaintiff"), hereby files this First Amended Complaint against the

Defendants, Nehama Hanoch, ("Ms. Hanoch" or "Hanoch") and Cheyenne Goodman, ("Ms.

Goodman" or "Goodman" and collectively the "Defendants"), and in support thereof, avers as

follows:

I.   **THE PARTIES**

1.    Plaintiff, Edwin León ("Plaintiff") is an adult individual with a residence at 622

Fulton Street, Conshohocken, Pennsylvania 19428.

2.     Defendant, Nehama Hanoch, ("Ms. Hanoch" or "Hanoch") is an adult individual with a last known residence at 101 W. 10th Street, Wilmington, Delaware 19801.

3.     Defendant, Cheyenne Goodman, ("Ms. Goodman" or "Goodman") is an adult individual whose residence location is not being divulged to this Court.

## II. JURISDICTION AND VENUE

4.     The actions, inactions, errors, and omissions of the Defendants were performed in Philadelphia County, Pennsylvania.

5.     The amount in controversy is greater than $50,000.00.

6.     Pursuant to Pa. R. Civ. P. Nos. 1006(a), 2130(a) and 2179(a), venue is proper in this Court.

## III. OPERATIVE FACTS

7.     The Plaintiff was employed by the law firm of Young, Conaway, Stargatt and Taylor, LLP ("YCST") as a law clerk in August of 2021.

8.     Plaintiff believes and avers that Ms. Hanoch was an employee of YCST in August of 2021 and promoted to an associate with the firm in October 2021 when she passed the Delaware bar examination.

9.     Plaintiff believes and avers that Ms. Goodman was employed by YCST as a legal intern in the winter of 2022 while she was completing law school.

10.     Subsequent to completing the Delaware Bar Examination in July 2022, Ms. Goodman began work as a law clerk at the YCST firm.

11.     During this time, the Plaintiff and Ms. Hanoch were part of a group of friends who frequently socialized together.

Case ID: 230400452

12.     The Plaintiff and Ms. Hanoch would spend time together as friends.  Ms. Hanoch even referred to the Plaintiff as being like a brother to her.

13.     During the summer of 2022, the Plaintiff and Ms. Goodman had the opportunity to take time from their employment and workloads to study for the Delaware bar examination where they spent many hours together.

14.     During this time, the Plaintiff and Ms. Goodman entered into a casual dating relationship.

15.     During this time, Ms. Goodman began to ask Plaintiff to include her in his social activities with his YCST colleagues, and later Ms. Goodman would state to the Plaintiff that the Plaintiff had "peer pressured" Ms. Goodman into being friends with the YCST colleagues, while the Plaintiff did not attend all of the social events.  See attached as **Exhibit "A"** for text messages exchanged between the Plaintiff and Ms. Goodman that illustrates this pattern on the part of Ms. Goodman.

16.     As time passed the relationship became romantic, intimate and included sexual relations.  Please see attached as **Exhibit "B"** for several texts that illustrate the sexual nature of the relationship between Plaintiff and Ms. Goodman, spanning time from July of 2022 through December of 2022.

17.     The sexual relationship frequently included consensual role playing and consensual acts of BDSM.   Please see attached as **Exhibit "C"** for a text that illustrates that Ms. Goodman purchased sexual items on her own and for use with the Plaintiff.

18.     Ms. Goodman, who was an avid reader, even shared with the Plaintiff several of her books which detailed fantasy sexual acts in which she wished the Plaintiff would participate.

Case ID: 230400452

19.     Despite their relationship and sexual intimacy, Ms. Goodman kept the relationship a secret from Ms. Hanoch and their other colleagues at YCST.  *See*, generally, Exhibit A.

20.     After completing the 2022 Delaware bar exam, the Plaintiff returned to YCST as a law clerk while he awaited the bar examination results.

21.     At this point the Plaintiff was working full time at YCST and had less time to spend with Ms. Goodman.  See attached as **Exhibit "D"** for a true and correct copy of text exchanges between the Plaintiff and Ms. Goodman illustrating the change in time available for the Plaintiff and Ms. Goodman to get together socially.

22.     During the fall of 2022, the Plaintiff and Ms. Hanoch ended their friendship.

23.     At this point Ms. Goodman began to fabricate and share with others a story that she was being stalked and harassed by the Plaintiff.  See attached as **Exhibit "E"** for copies of select text messages exchanged between Goodman and Hanoch.  Note that the redactions are the Defendants.

24.     However, at the same time, Ms. Goodman was in fact being supported by the Plaintiff, and was more than capable of telling the Plaintiff when she was too busy to help the Plaintiff.  See attached as **Exhibit "F"** for copies of text messages between Plaintiff and Ms. Goodman and as **Exhibit "G"** for text messages between Ms. Goodman and Ms. Hanoch from the same time period, showing the actual relationship between the Plaintiff and Ms. Goodman and the fabrication that Ms. Goodman provided to Ms. Hanoch.  Note that the redactions in Exhibit G are the Defendants.

25.     Plaintiff understands and avers that statements made by Ms. Goodman to Ms. Hanoch are inconsistent with phone, text and Snapchat records between Plaintiff and Ms. Goodman.  *See*, generally, Exhibits A, B, C, D and F.

4

Case ID: 230400452

26.     As a result of Ms. Goodman's defamatory and untrue statements about the Plaintiff, Ms. Hanoch, without investigating and without any proof, broadcast her feelings that she did not want to be friends with someone like the Plaintiff who treated her friend, Ms. Goodman, poorly.  *See,* generally, Exhibits D and G.  It was unknown to Ms. Hanoch at this time that the Plaintiff and Ms. Goodman were engaged in an ongoing intimate relationship, which Ms. Goodman apparently wanted to keep secret from her friend, Ms. Hanoch.  *See,* generally, Exhibits D and G.

27.     It was not reasonable for Ms. Hanoch to have taken these actions based solely on the statements of Ms. Goodman, and without an investigation or research as to the truth of these statements, particularly given her previous relationship with the Plaintiff.

28.     As a result of the Goodman and Hanoch friendship, and their individual relationship with Plaintiff, it became increasingly important to Ms. Goodman that she keep her relationship with Plaintiff a secret from Ms. Hanoch.

29.     Additionally, at this time Ms. Goodman became aware that someone had published to both senior management as well as to other YCST colleagues and friends, the defamatory lies that Ms. Goodman was providing to Ms. Hanoch.  See attached as **Exhibit "H"** for true and correct copies of texts between Ms. Goodman and Ms. Hanoch illustrating this matter.  Note that the redactions in Exhibit H are the Defendants.

30.     Plaintiff understands and avers that prior to the events of December 16 and 17, 2022, Ms. Goodman never told Ms. Hanoch she had been in an intimate relationship for months with Plaintiff which included regular visits to his home in PA and sexual relations between the Plaintiff and Ms. Goodman.

Case ID: 230400452

31.     Despite this lack of knowledge, it was not reasonable for Ms. Hanoch to accept as fact the statements made by Ms. Goodman about the Plaintiff without investigation or other inquiry of any sort, particularly given the past relationship between the Plaintiff and Ms. Hanoch.

32.     Ms. Goodman did not tell Ms. Hanoch, until December 18, 2022, that Ms. Goodman had daily contact with the Plaintiff through various media, including text messages, FaceTime calls, Snapchat messages and audio phone calls, which were regularly initiated by each of the parties. *See*, generally, Exhibits A, B, C, D and F.

33.     Instead, Ms. Goodman repeatedly told Ms. Hanoch that the Plaintiff was stalking her. *See*, generally Exhibits E and G.

34.     Upon information and belief, this is not the first time that Ms. Goodman has been embroiled in dating and/or sexual drama with her work colleagues.  See attached as **Exhibit "I"** for a true and correct copy of one illustrative text exchange, wherein Ms. Goodman purports that another male colleague, Jesse Flowers, was interested in her but she was not interested in him, and her alternate take on it to the Plaintiff, who at that time was her sexual partner.

35.     It is important to note that Ms. Goodman seemed to have no problem in shutting down the purported advances of Mr. Flowers, but would have this Court believe that she is incapable of extricating herself from a relationship between two adult individuals that live in two separate states, despite text evidence to the contrary.  Please see attached as **Exhibit "J"** for true and correct copies of illustrative texts from Ms. Goodman to the Plaintiff, wherein Ms. Goodman clearly sets boundaries with the Plaintiff, which the Plaintiff clearly accepts.

36.     During this time, Ms. Goodman shared with Ms. Hanoch false information about the Plaintiff in an effort to keep Ms. Hanoch from renewing her friendship with Plaintiff while

Case ID: 230400452

simultaneously telling the Plaintiff to keep his distance from Ms. Hanoch.  *See*, generally, Exhibits D and G.

37.     Ms. Goodman made these statements to create a narrative that Plaintiff was the type of person from which Ms. Goodman needed protection.

38.     Despite these assertions to Ms. Hanoch that the Plaintiff was someone from whom she needed protection, Ms. Goodman apparently requested assistance from the Plaintiff when she had a medical issue.  Please see attached as **Exhibit "K"** for a true and correct copy of the text between the Plaintiff and Ms. Goodman showing what happened to Ms. Goodman.

39.     Upon information and belief, Ms. Goodman apparently published a false narrative to Ms. Hanoch that the Plaintiff drugged Ms. Goodman during the incident that is commemorated in the text exchange identified as Exhibit K.  Please see attached as **Exhibit "L"** for a true and correct copy of the deposition transcript of Ms. Hanoch, specifically page 59, lines 20-24, page 60, lines 1-24 and page 61, lines 1-18, wherein Ms. Hanoch, under oath, states that the Plaintiff drugged Ms. Goodman, which, pursuant to Exhibit K, clearly did not occur.

40.     In December 2022 Ms. Goodman continued her relationship with the Plaintiff while simultaneously not disclosing this relationship to anyone including Ms. Hanoch.

41.     Plaintiff believes and avers that eventually, Ms. Hanoch began to believe that Ms. Goodman required protection from Plaintiff based on fabrications made by Goodman to Hanoch.

42.     This belief was not reasonable given Ms. Hanoch's previous relationship with the Plaintiff and her understanding of him as an individual, coupled with the fact that Ms. Hanoch had never seen Plaintiff behave in any way inappropriately with Ms. Goodman and had taken no steps to independently investigate these claims made by Ms. Goodman.

Case ID: 230400452

43.     Despite the continued disparaging accusations about Plaintiff made by Ms. Goodman, Hanoch, the Plaintiff and Goodman continued to socialize in public together and planned to be together the evening of December 16, 2022, with a group of other friends and colleagues from YCST.

44.     Ms. Goodman and Ms. Hanoch drove to Philadelphia together as passengers in a car driven by a YCST colleague, Carol Cox.

45.     The Plaintiff arrived in Philadelphia separately and did not attempt to drive or otherwise arrange for transportation for Ms. Goodman to Philadelphia.  Throughout the course of the evening, and unbeknownst to Hanoch, Ms. Goodman and the Plaintiff repeatedly sent each other racy texts and Snapchat messages which outlined the ways in which Ms. Goodman and Plaintiff would engage in intercourse and bondage after the night out.  Ms. Goodman even stated, "I want to have sex with you." See attached as **Exhibit "M"** for true and correct copies of snapchats exchanged between the Plaintiff and Ms. Goodman from December 16 – 17, 2022.

46.     The entire group left together and made their way to the Ranstead Room in Philadelphia.  They were unable to accommodate the group, so the group stopped in a local bar.

47.     The entire group then went to Woody's Bar located at 202 S. 13th Street, Philadelphia.

48.     At Woody's, the group danced and drank for approximately two (2) hours. During this time, Goodman and the Plaintiff left to spend time together and avoid being seen kissing and caressing each other.

49.     On two separate occasions alcohol was spilled on Plaintiff by others in the group and Plaintiff and Goodman used this as an excuse to leave the larger group and be alone.

8

Case ID: 230400452

50.     Despite the fact that Ms. Goodman and the Plaintiff were flirting with each other all evening, Goodman told Hanoch that she did not like the Plaintiff.

51.     Ms. Goodman fabricated a story about Plaintiff asking her whether she was wearing underwear, which she used to explain to Hanoch that the Plaintiff made her uncomfortable.   There is no evidence that the Plaintiff ever asked this of Ms. Goodman, as shown by Exhibits B and M, generally.

52.     Given what Ms. Hanoch had witnessed that evening, i.e. a lack of any sort of hazing or inappropriate behavior from the Plaintiff, it was unreasonable for Ms. Hanoch to believe that Ms. Goodman was in need of protection from the Plaintiff.

53.     When the evening was ending in the early morning hours of December 17, 2022, Goodman was intoxicated, and unable to continue the charade about her relationship with the Plaintiff.

54.     Toward the end of the evening, Ms. Goodman abruptly left Woody's alone and without notice to anyone else in the group.

55.     Once outside of Woody's, Ms. Goodman initiated a phone call to the Plaintiff, and told the Plaintiff that she was outside of Woody's and was unable to re-enter.

56.     Ms. Goodman told the Plaintiff that she had too many drinks, was not feeling well, and that she wanted to leave.

57.     The Plaintiff exited the bar and met Ms. Goodman on the sidewalk, bringing her coat at her request.   Outside of Woody's the Plaintiff encountered a bouncer who told the Plaintiff that Ms. Goodman was prohibited from re-entering Woody's because she was too intoxicated.

9

Case ID: 230400452

58.    Ms. Goodman asked Plaintiff to take her to get food.  Plaintiff and Ms. Goodman walked approximately two blocks when Ms. Goodman and the Plaintiff received a group text asking them to meet their friends near Woody's.

59.    Ms. Goodman and the Plaintiff walked back to Woody's.  Ms. Goodman and the Plaintiff spoke, laughed, and spent time together with friends Emily Jones ("Jones") and her fiancée, Mr. Schugg ("Schugg").  This incident is captured in video surveillance footage from that evening, which the Plaintiff will submit to Defendants through discovery.

60.    Schugg offered Goodman a ride home, but Goodman declined.

61.    Instead, Goodman stated that she wanted to take an Uber alone from City Hall, which was approximately ten minutes away by foot.

62.    Then, Ms. Goodman turned away from Jones and Schugg, waived at the Plaintiff to follow her, and started walking away.

63.    As Goodman began to walk away from the group, Plaintiff and Schugg followed Goodman.

64.    At some point, Schugg returned to his fiancée, and Plaintiff told Jones that he would make sure Goodman returned home safely.

65.    Jones asked Plaintiff to send her a text message when Plaintiff  knew Goodman was home.

66.    As Goodman and Plaintiff walked toward City Hall, Hanoch texted Goodman and asked Goodman where she was located.

67.    Ms. Goodman responded with a text message text that she was "Good" and that she was taking an Uber home.

Case ID: 230400452

68.     Hanoch then asked Goodman with whom she was taking the Uber.  At this point, Ms. Goodman sent a text to Hanoch explaining that she was trying to "get away" from the Plaintiff.

69.     Hanoch then told Ms. Goodman to stay where she was and wait for her.

70.     At this point Goodman appeared to become even more anxious and distraught.

71.     Goodman then began to shout at Plaintiff. After several minutes, Plaintiff decided to walk to his vehicle and away from Goodman.

72.     When the Plaintiff was approximately fifty (50) yards away, Goodman yelled his name, and Plaintiff turned around toward the location.

73.     It appeared to Plaintiff that Goodman was being approached by an unknown male.

74.     The Plaintiff began to jog towards Ms. Goodman and the male, and Goodman began walking away from the male.

75.     When Plaintiff caught up to Goodman, Goodman began to run in the opposite direction and the Plaintiff followed.

76.     Eventually Plaintiff caught up to Goodman where she was sitting on the curb.

77.     At this time Hanoch began to approach the City Hall area where Plaintiff and Goodman were located.

78.     As Hanoch approached City Hall,  Hanoch approached police officers who were in a car adjacent to City Hall and told them that a sexual assault was occurring and that she needed their assistance.

79.     As Hanoch passed the police officers, she saw Ms. Goodman, who was not being assaulted or even touched by the Plaintiff.

11

Case ID: 230400452

80.     As such, Ms. Hanoch was well aware that Ms. Goodman was not in any imminent harm or danger of being harmed, as she was a few feet from several police officers and not being touched or assaulted by the Plaintiff when Ms. Hanoch arrived on the scene.

81.     Despite this, when Ms. Hanoch saw the Plaintiff, instead of checking on Ms. Goodman, Ms. Hanoch instead approached Plaintiff and began to physically attack the Plaintiff with slaps and punches to his upper body and face area, resulting in a cut to the Plaintiff's cheek, and despite the Plaintiff not touching Ms. Goodman at the time of Ms. Hanoch's attack of the Plaintiff.

82.     Hanoch repeatedly struck the Plaintiff, without warning, with her fists, multiple times.  Hanoch's blows to Plaintiff caused bruising and a visible, bleeding cut to Plaintiff's face.

83.     Hanoch shouted at Plaintiff stating that she would "fucking kill" the Plaintiff.

84.     Hanoch continued to hit and slap Plaintiff even when he attempted to explain that he was attempting to assist Goodman.

85.     At this time, Plaintiff became lightheaded and told Hanoch while she was still punching and slapping him that he would have to speak to the nearby police officers if she did not stop her slapping and punching him.

86.     Despite this warning, Ms. Hanoch continued to physically attack the Plaintiff while simultaneously making verbal threats to the Plaintiff, including threatening to go to the police in retaliation in order to get the Plaintiff into "trouble."

87.     Hanoch would later text her friends that she tried to punch and kick the Plaintiff, acknowledging that she had physically attacked the Plaintiff.  See attached as **Exhibit "N"** for true and correct copies of the text from Ms. Hanoch to her friend, Jesse Flowers, stating that she tried to punch and kick the Plaintiff that evening, and that she wanted to harm the Plaintiff.

Case ID: 230400452

88.     Additionally, Ms. Hanoch told her colleague, Tim Powell, that she had tried to punch and kick the Plaintiff.  See attached as **Exhibit "O"** for a true and correct copy of this text message.

89.     Despite this, Ms. Hanoch would, under oath, deny that she remembered physically attacking the Plaintiff.  *See*, Exhibit M, specifically, page 35, lines 10-24 and page 36, line 1- 9, where Ms. Hanoch states that she does not remember attacking the Plaintiff, yet remembers the events up to and after the physical attack.

90.     It is not possible for Ms. Hanoch to not remember events that she told no less than two other people had occurred.  Ms. Hanoch's behavior was a physical assault on Plaintiff.

91.     Ms. Hanoch's behavior was not taken in the defense of another.

92.     Plaintiff immediately went and spoke to police officers. Plaintiff provided all relevant information to the police, asked the police to contact medical professionals, and waited for the police to generate a police incident number for assault, harassment, and terroristic threats.

93.     Eventually, Plaintiff was examined in an ambulance and after a period of time, the Plaintiff was cleared and released from the scene.  At approximately 3:00 a.m. on December 17, 2022, Ms. Goodman called Plaintiff at his home and apologized, stating that she was drunk and had an unexpected panic attack.

94.     The Plaintiff inquired as to why Ms. Goodman was saying he was chasing her, and the Ms. Goodman responded "Because you were chasing me I didn't say you were doing anything wrong, I just said it made me panic."

95.     Ms. Goodman told the Plaintiff "I'm just processing how I feel. I don't think that anything that you did was wrong, it was just the act that made me panic."

13

Case ID: 230400452

96.     Ms. Goodman also stated,  "They don't think you attacked me and if they do I will be very clear that you didn't okay?"

97.     At no time did Ms. Goodman disclose to the Plaintiff that she had, for months, been defaming the Plaintiff to Ms. Hanoch, and likely others, with false stories about sexual stalking and hazing.

98.     Instead, Ms. Goodman attempted to assure Plaintiff that she would call their co-workers and let them know that Plaintiff was actually trying to help her, and the incident was a misunderstanding. Ms. Goodman told Plaintiff,  "I'm sorry, I'll talk to her [Hanoch] in the morning, I promise, and I'll talk to everyone else and make sure that they know;" and "It's just a misunderstanding, I told you I'll fix it in the morning I promise," and "I get that you were trying to protect me," "you could have let me have space and just let me be in your eyesight."

99.     Ms. Goodman told the Plaintiff not to contact their co-workers and the other Defendant until she had the opportunity to tell their co-workers and the other Defendant about the misunderstanding.

100.    Upon information and belief, this request was made to allow Ms. Goodman time to create a false narrative about that evening and about her relationship with the Plaintiff.  Plaintiff was still concerned but Ms. Goodman repeatedly assured him by explaining that "I promise you I'll fix it in the morning." "I think they just saw me having a panic attack and assumed the worst." "I promise you I'll fix it and they'll all know it was my fault not yours. I promise."

101.    To his ultimate detriment, the Plaintiff believed Ms. Goodman, who he still believed to be his romantic partner, and agreed to say nothing and allow Ms. Goodman to "fix it."

102.    At no time did the Plaintiff demand that Ms. Goodman make a false statement in exchange for the Plaintiff not reporting the actions of Ms. Hanoch.

Case ID: 230400452

103.    Despite this, Ms. Goodman has repeatedly published the statement that the Plaintiff, on these phone calls, demanded that Ms. Goodman manipulate or falsify evidence, including but not limited to, publishing this statement to YCST, colleagues and the New Jersey Bar.

104.    These phone calls have been recorded and a true and correct transcript of these calls is attached hereto as **Exhibit "P"**.  These transcripts prove that Ms. Goodman repeatedly published false and defamatory statements about the Plaintiff.

105.    The next day, Goodman began once again to contact Plaintiff, ultimately resulting in Goodman visiting the Plaintiff at his home, entering the home using her own access code.

106.    Ms. Goodman spent the day at the Plaintiff's, in full view of the Plaintiff's home security video system, which she was at all times aware was in operation on the first floor of Plaintiff's home, only.  This day is captured in video surveillance footage from that afternoon and early evening from the first floor of Plaintiff's home, which the Plaintiff will submit to Defendants through discovery.

107.    Ms. Hanoch's behavior was not reasonable.  *See*, generally, Exhibit N and attached as **Exhibit "Q"** for true and correct copies of additional texts published by Ms. Hanoch defaming the Plaintiff.  Additionally, Ms. Hanoch's actions, upon information and belief, were taken solely to protect herself from her behavior the previous evening.  See attached as **Exhibit "R"** for a text between senior staffers at YCST stating that these are the actions Ms. Hanoch should take in order to protect herself.

108.    Despite the knowledge that the Plaintiff and Ms. Goodman were in a sexual relationship, Ms. Hanoch went to YCST, the employer of both Plaintiff and the Defendants, and

Case ID: 230400452

published false statements about Plaintiff, specifically that Plaintiff tried to assault Ms. Goodman. *See*, generally, Exhibit Q.

109.    In fact, Ms. Hanoch admitted that she was made aware that the Plaintiff and Ms. Goodman were in a sexual relationship on December 18, 2022.  *See*, Exhibit L, page 11, line 22 – 24 and page 12, line 1 – 2.

110.    Despite the knowledge that the Plaintiff and Ms. Goodman were in a sexual relationship, Ms. Hanoch continued in her demands that YCST block Plaintiff from access to the YCST offices.  *See*, generally, Exhibit Q.

111.    The actions of Ms. Hanoch immediately following the events of December 16-17, 2022 were taken with malice and with the intent to protect herself from possible repercussions for her actions in assaulting the Plaintiff, and not for any proper purpose, especially when upon her own admission, Ms. Hanoch became aware on December 18, 2022 that the Plaintiff and Ms. Goodman were engaged in a sexual relationship, but Ms. Hanoch did not revise any of her publications as a result of the receipt of this information.  *See*, Exhibit L.

112.    Ms. Hanoch's actions were not reasonable.

113.    As such, Ms. Hanoch's actions were actions taken outside any conditional privilege which Ms. Hanoch may claim, as Ms. Hanoch's actions were in fact an abuse of any purported privilege.

114.    It is not reasonable for an employee to demand that action be taken against another employee without investigation or justification, and based solely on innuendos.

115.    Ms. Goodman entered the Plaintiff's home at approximately 1:00 p.m. on December 17, 2022, in full view of the Plaintiff's home video system.  For several hours the Plaintiff and Ms. Goodman spent romantic time together, laying in each other's arms and

Case ID: 230400452

snuggling.  As stated previously, this incident is captured in video surveillance footage from that evening, which the Plaintiff will submit to Defendants through discovery.

116.    Ms. Goodman also explained to the Plaintiff that she would contact a more senior attorney at YCST, Roxanne Eastes, and tell her about the purported traumatic event so that other co-workers would understand the events of the prior evening and not think poorly of the Plaintiff.

117.    Ms. Goodman contacted Ms. Eastes and told her that if Plaintiff had gotten her into his car on the evening of December 16 – 17, 2022, that he would have raped her.  See attached as **Exhibit "S"** for a true and correct copy of a text exchange between Chris Lambe and Roxanne Eastes, both attorneys at YCST, which details what Ms. Goodman published to Roxanne Eastes about the evening of December 16-17, 2022.

118.    After spending an afternoon together, Ms. Goodman told the Plaintiff that she would contact all co-workers and "make this right," by telling them that she was drunk but not in any danger during the previous night.  *See*, Exhibit P.

119.    Prior to leaving the Plaintiff's house, the Plaintiff and Ms. Goodman were intimate.

120.    After many hours of intimate time together, Ms. Goodman told the Plaintiff their relationship was her priority, and that she would choose to make the situation right even at the cost of her friendship with Ms. Hanoch.

121.    After leaving the Plaintiff's home, Ms. Goodman in fact texted Ms. Hanoch sometime after 10pm on the evening of December 17, 2022, and stated that she had just taken a Xanax.  Please see attached as **Exhibit "T"** for a true and correct copy of texts between the Defendants.

Case ID: 230400452

122.    Ms. Goodman made no mention of being in the Plaintiff's home or of in any way having any contact with the Plaintiff that day.

123.    The next day, Ms. Goodman and Ms. Hanoch again texted each other, with Ms. Hanoch asking Ms. Goodman if she slept well and Ms. Goodman replying that she had slept really well, and was taking some "xans" home with her, presumably from her parents house where she purportedly spent the night after leaving the Plaintiff's home.  *See*, Exhibit T.

124.    Despite this, after exchanging these texts with Ms. Hanoch, Ms. Goodman proceeded to tell colleagues that she was sexually assaulted by the Plaintiff. *See*, generally, Exhibit S.

125.    Unbeknownst to the Ms. Goodman at the time, Hanoch had already contacted multiple parties in the group that was in attendance during the evening of December 16 – 17, 2022, in order to get their stories straight prior to reporting the events of the previous evening to YCST.  *See*, Exhibit L, specifically page 48, lines 13-24 and page 49, lines 1-22.

126.    Additionally, Ms. Hanoch, along with several of the YCST colleagues who were present the night of December 16, 2022, (and into the early morning hours of December 17, 2022), made plans to meet with senior members of YCST to request that the Plaintiff be blocked from accessing YCST and to further the narrative that the Plaintiff was a dangerous criminal. *See*, generally, Exhibit Q.

127.    On Sunday, December 18, 2022, at approximately 11:00 p.m., the Plaintiff attempted to login to his work email and plan for his week.

128.    The Plaintiff was surprised when, without notice, the Plaintiff was suddenly locked out of the YCST system.

Case ID: 230400452

129.    The Plaintiff next contacted IT and after an hour of attempts, the YCST IT department said they could not help until the following day.

130.    As a result, the Plaintiff then checked his personal email and became instantly ill, both visibly and physically.  In his personal email he read an email sent to him by YCST indicating that he had been accused of something serious, and as a result he would be suspended from YCST with pay.  See attached as **Exhibit "U"** for a true and correct copy of the email sent by YCST to the Plaintiff.

131.    The Plaintiff immediately contacted the YCST representative who indicated that at least one employee had accused him of either sexual or physical assault.

132.    Plaintiff also attempted to view Goodman's social media profile and found that he was prohibited from viewing her profile, and prohibited from viewing the profiles of most of the other YCTS colleagues who were present during the night out in Philadelphia, as well as additional individuals who were not present that evening.

133.    Plaintiff believes and avers that the Defendants and their YCST colleagues with whom they were socializing that December evening decided to collectively paint the Plaintiff as a deviant, aggressive, sexual stalker in order to justify the assault by Hanoch on the Plaintiff.  *See*, generally, Exhibit R.

134.    Plaintiff subsequently learned that the Defendants collectively contacted individuals that collaborated with the Plaintiff, friends they shared with the Plaintiff and co-workers of the Plaintiff for the purpose of destroying his reputation and protecting Hanoch.

135.    This behavior continued for months, as the Defendants continued to publish false statements about the Plaintiff and request that other individuals support the Defendants in actively blocking contact with the Plaintiff.  See attached as **Exhibit "V"** for a true and correct copy of

Case ID: 230400452

two such illustration of these publications and requests by Ms. Hanoch on behalf of Ms. Goodman.

136.   Throughout this time, more co-workers unfollowed or deleted the Plaintiff from social media and professional platforms such as LinkedIn, Instagram, and Facebook.

137.   A few days after the Plaintiff was able to discuss the incident with YCST, the Plaintiff learned that another acquaintance of Plaintiff had been told by Ms. Hanoch that the Plaintiff not only assaulted Goodman, but that he had in fact raped Goodman.

138.   Further, the Plaintiff learned that Hanoch had contacted individuals as well as other female attorneys and told them that the Plaintiff was a dangerous predator, and that should anyone contact them about Plaintiff, to explain that they fear the Plaintiff as being a dangerous person.  *See*, generally, Exhibit V.

139.   Ms. Hanoch even asked colleagues to block the Plaintiff in an effort to show the Plaintiff that he was not believed, and that the defamatory statements were in fact believed by the Plaintiff's colleagues and former friends.  *See*, generally, Exhibit V.

140.   It is clear that Goodman had no reasonable belief that Plaintiff controlled her and could force her into a relationship with the Plaintiff.  *See*, generally Exhibits B and F.

141.   It is also clear that at all times, the Plaintiff and Goodman were engaged in a consensual sexual relationship.  *See*, generally, Exhibits B and F.

142.   It is also clear that it was not reasonable for Hanoch to continue to publish falsehoods about the Plaintiff in an attempt to divert blame for her actions on the night of December 16 – 17, 2022.

143.   Plaintiff learned that on or about December 22, 2022, as a result of the continued defamation of the Plaintiff by Ms. Goodman and Ms. Hanoch, a senior attorney at YCST took

Case ID: 230400452

Goodman to the Plymouth Township Police Department to report the Plaintiff for an alleged sexual assault against her.

144.     As a result, Plaintiff had to retain legal counsel to represent him on the potential criminal charges, separate and apart from the civil litigation.

145.     Further, the Plaintiff had to submit himself to police interviews and a polygraph examination, which, three (3) months after the report by Goodman, resulted in the Plymouth Township Police Department representing to Plaintiff's criminal defense counsel that Plaintiff was no longer the subject of any criminal investigation for the alleged sexual assault.  See attached as **Exhibit "W"** for a true and correct copy of the letter sent by Plaintiff's counsel detailing these representations by the Plymouth Township Police Department.

146.     However, Goodman still maintained that the investigation was ongoing despite having this knowledge in late February and early March.

147.     Each of the Defendants actively participated in one or all of the collective activities described above in order to accomplish their goal of destroying the Plaintiff's reputation and dissuading him from pursuing any charges against Hanoch.

148.     It is clear the Defendants all agreed to falsely claim that the Plaintiff was a dishonest and dangerous individual.

149.     The Defendants repeatedly published these false rumors to Plaintiff's employer, co-workers, and friends.

150.     As a result of these false statements, on or about December 27, 2022, the Plaintiff attempted to hire an attorney to represent him in the instant matter.

151.     The Plaintiff was fearful that the Defendants would take additional actions in an attempt to further malign the Plaintiff.

21

Case ID: 230400452

152.    This counsel in fact attempted to contact Goodman on December 29, 2022.  See attached as **Exhibit "X"** for a true and correct copy of the text messages showing that counsel attempted to contact Ms. Goodman.

153.    Upon information and belief, it was this call which prompted Ms. Goodman to move forward with filing the Protection from Abuse Order in the State of Delaware.

154.    Defendants' actions have permanently damaged Plaintiff's reputation and his ability to succeed in his chosen profession.

155.    Since the incident on December 17, 2023, and as a direct result of the statements made by the Defendants, the Plaintiff has lost contacts in his professional network, has been suspended from work, and has been repeatedly referred to as a criminal among friends and co-workers.

156.    Plaintiff is not able to schedule a character and fitness interview with the Delaware Bar as a result of the actions of the Defendants, despite passing the Delaware Bar in the summer of 2023.

157.    As such, Plaintiff has suffered special harm in not being eligible for employment in Delaware as an attorney, as a direct result of the actions of the Defendants.

158.    In a further act of harassment and defamation, on or about January 3, 2023, Goodman, in concert with Hanoch, filed a Protection from Abuse ("PFA") petition in the State of Delaware, along with multiple pleadings drafted by Goodman who, upon information and belief, was assisted by Hanoch.

159.    During the PFA litigation, Goodman continued to deny she and the Plaintiff were engaged in an intimate relationship on December 16 – 17, 2022.  See attached as **Exhibit "Y"** for

Case ID: 230400452

a true and correct copy of Ms. Goodman's deposition testimony, specifically page 5, lines 13-15, wherein Ms. Goodman states that she did not have a relationship with the Plaintiff.

160.    However, once Ms. Goodman became aware of the fact that the PFA action would not be heard if she did not have a relationship with the Plaintiff, Ms. Goodman once again changed her story and filed an amended PFA application, this time claiming that Ms. Goodman and the Plaintiff had a relationship.

161.    In an effort to protect his reputation and personal interests, Plaintiff  needed to engage the services of a family law attorney and defend himself against the false allegations asserted by the Goodman Defendant.

162.    The PFA proceedings are on-going and have  cost the Plaintiff thousands of dollars.

163.    Plaintiff believes and avers that on December 18, 2022, Hanoch learned the full scope of Goodman's false allegations during the PFA trial, yet continued to maintain her numerous false statements about Plaintiff.  *See*, generally, Exhibit L.

164.    On or about September 28, 2023, the Plaintiff, through his counsel, caused the Writ he had filed pro se in March of 2023 to be re-issued, and added Ms. Hanoch and a third Defendant, Roxanne Eastes, against whom the Writ was withdrawn prior to the filing of the original Complaint and the instant Amended Complaint.

165.    Upon information and belief, as a result of this re-issuance of the Writ, which Ms. Goodman was aware of as the Plaintiff had added Ms. Goodman's email address to the system when he originally filed the Writ in March of 2023, Ms. Goodman contacted the New Jersey bar to file a Complaint against the Plaintiff.  See attached as **Exhibit "Z"** for a true and correct copy of the New Jersey Bar Complaint.

Case ID: 230400452

166.    Upon information and belief, Ms. Hanoch assisted in the filing of this Complaint.

167.    Incredibly, Ms. Goodman claimed that Plaintiff "fabricated evidence," took actions to "witness tamper" and further engaged in "coerc[ing] false testimony."  *See*, Exhibit Z. There is no evidence that the Plaintiff engaged in any of these purported actions, and this action by the Defendants is another instance of the incredible lengths that the Defendants will go to in order to defame the Plaintiff.

## IV.    CAUSES OF ACTION

### COUNT I - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

168.    Plaintiff hereby incorporates paragraphs 1 through 167 above by reference as though same were fully set forth at length.

169.    Defendants have engaged in defamatory conduct directed toward Plaintiff.

170.    Defendants have engaged in assault and battery directed to the Plaintiff.

171.    Defendants' conduct was outrageous.

172.    Defendants' conduct was taken in response to the Plaintiff filing a police report against Hanoch in an effort to cover-up the repeated and numerous false statements of Goodman and Hanoch and the assault and battery by Hanoch on the Plaintiff.

173.    The Defendants' conduct has continued for more than twelve (12) months and has increased in frequency and severity as the months have passed.

174.    The Defendants are aware or should be aware that Plaintiff suffers from a serious anxiety disorder as a result of his military and police service.  In fact, the Plaintiff has a certified service animal as a result of this condition, a fact of which the Defendants are well aware as this service animal was present in the YCST offices.  Plaintiff's health care provider has confirmed that Plaintiff has seen an increase in depression and anxiety as a result of the statements made by

24

Case ID: 230400452

the Defendants about the Plaintiff, which was published throughout the community at large. (Plaintiff's private health and related documents can be confidentially provided to the Court as this litigation progresses.)

175.   The Defendants' conduct has caused the Plaintiff to fear arrest and retribution from the Defendants and his former YCST colleagues.

176.   The Defendants' conduct has caused additional anxiety and severe emotional distress on Plaintiff causing him to seek mental health care.

177.   The Defendants' conduct has caused the Plaintiff to fear losing his current employment, and further fear that he may become unable to seek or maintain bar membership and other meaningful employment in the practice of law.

178.   The Defendants' conduct has caused the Plaintiff to be barred from scheduling a character and fitness interview with the Delaware Bar, causing the Plaintiff to lose the opportunity for employment as an attorney in Delaware.

**WHEREFORE**, Plaintiff, Edwin León, respectfully requests that this Honorable Court and the trier of fact find judgment in his favor and against Defendants, Cheyenne Goodman and Nehama Hanoch, in an amount in excess of $50,000.00, together with all fees, costs, interest and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

179.   Plaintiff hereby incorporates paragraphs 1 through 178, above, by reference as though same were fully set forth at length.

180.   Defendants have engaged in defamatory conduct directed toward Plaintiff.

181.   Defendants have engaged in assault and battery directed to the Plaintiff.

182.   Defendants' conduct was outrageous.

Case ID: 230400452

183.    Defendants' conduct was taken in response to the Plaintiff filing a police report against Hanoch in an effort to cover-up the repeated and numerous false statements of Goodman and Hanoch and the assault and battery by Hanoch on the Plaintiff.

184.    The Defendants' conduct has continued for more than twelve (12) months and has increased in frequency and severity as the months have passed.

185.    The Defendants' conduct has caused the Plaintiff to fear arrest and retribution from the Defendants and his former YCST colleagues.

186.    The Defendants' conduct has caused additional anxiety and severe emotional distress on Plaintiff causing him to seek mental health care.

187.    The Defendants' conduct has caused the Plaintiff to fear losing his current employment, and further fear that he may become unable to seek or maintain bar membership and other meaningful employment in the practice of law.

188.    The Defendants' conduct has caused the Plaintiff to be barred from scheduling a character and fitness interview with the Delaware Bar, causing the Plaintiff to lose the opportunity for employment as an attorney in Delaware.

**WHEREFORE**, Plaintiff, Edwin León, respectfully requests that this Honorable Court and the trier of fact find judgment in his favor and against Defendants, Cheyenne Goodman and Nehama Hanoch, in an amount in excess of $50,000.00, together with all fees, costs, interest and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## COUNT III - INVASION OF PRIVACY

189.    Plaintiff hereby incorporates paragraphs 1 through 188, above, by reference as though same were fully set forth at length.

190.    Defendants have engaged in defamatory conduct directed toward Plaintiff.

191.    Defendants have engaged in assault and battery directed toward the Plaintiff.

Case ID: 230400452

192.    Defendants' conduct has been  outrageous.

193.     Defendants' conduct was taken in response to the Plaintiff filing a police report against Hanoch in an effort to cover-up the repeated and numerous false statements of Goodman and Hanoch and the assault and battery by Hanoch on the Plaintiff.

194.    The Defendants' conduct has continued for more than twelve (12) months and has increased in frequency and severity as the months have passed.

195.    Goodman filed a PFA against the Plaintiff, on the basis of information that was false, which Goodman and Hanoch knew was false, with the intent to make this information public through the PFA litigation, and intending to do harm to the Plaintiff's personal and business reputation.

196.    Further, Goodman filed a complaint with the New Jersey Bar against the Plaintiff, upon information and belief with the assistance of Hanoch, on the basis of information that was false, with the intent to do harm to the Plaintiff's personal and business reputation.

197.    Defendants have published information about the Plaintiff to the general public.

198.    Defendants have repeatedly disclosed or published information about Plaintiff which is false and damaging to Plaintiffs' reputation.

199.    A reasonable person would find the conduct of the Defendants to be objectionable.

**WHEREFORE**, Plaintiff, Edwin León, respectfully requests that this Honorable Court and the trier of fact find judgment in his favor and against Defendants, Cheyenne Goodman and Nehama Hanoch, in an amount in excess of $50,000.00, together with all fees, costs, interest and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## COUNT IV - DEFAMATION

Case ID: 230400452

200.    Plaintiff hereby incorporate paragraphs 1 through 199, above, by reference as though same were fully set forth at length.

201.    On or about December 18, 2022, Hanoch filed a report or request with YCST in which she accused the Plaintiff of specific behavior and acts to harm Plaintiff's personal and business reputation knowing or having a reasonable belief they were false when made by Hanoch.

202.    On or about December 18, 2022, Hanoch and Goodman published statements about the evening of December 16-17, 2022 to YCST and alleged that the Plaintiff engaged in inappropriate conduct toward Goodman which they knew or should have known were false when made.

203.    By Hanoch's own admission, at the time of the publication of these statements, Hanoch was aware that the Plaintiff and Goodman had been engaged in a relationship, yet Hanoch continued to publish statements she knew were false.

204.    Sometime in late December, Goodman, with the assistance of colleagues at YCTS, published to Plymouth Township police, false statements accusing the Plaintiff of criminal acts.

205.    Then, in early 2023, Goodman, with the support of Hanoch, filed a PFA against the Plaintiff in the State of Delaware.  See attached as **Exhibit "AA"** for a true and correct copy of communications between Goodman and Hanoch wherein they discuss collaboration of the defamatory PFA filing,

206.    The PFA evidence presented by the Defendants included public disclosures about Plaintiff's personal life and personal information defaming the Plaintiff's character that were false when made, further alleging the Plaintiff of being engaged in a coercive sexual relationship with Goodman.

Case ID: 230400452

207.    The materially false  PFA allegations resulted in severe damage to the Plaintiff's personal and professional reputation and ability to be personally and financially successful in his legal profession within the State of Delaware where he was employed.

208.    The PFA allegations resulted in severe damage to the character of the Plaintiff.

209.    The PFA Allegations have caused the Plaintiff to be unable to schedule a character and fitness interview with the Delaware Bar, thus preventing the Plaintiff from obtaining licensure with the State of Delaware.

210.    Then, in September of 2023, after the reissuance of the writ in the instant matter, Goodman, upon information and belief with the support of Hanoch, filed a complaint against the Plaintiff with the Bar of the State of New Jersey ("NJ Bar Complaint").

211.    The evidence presented by the Defendants included statements about Plaintiff's character that were false when made, further alleging the Plaintiff of having engaged in evidence and witness tampering.

212.    The materially false NJ Bar Complaint resulted in severe damage to the Plaintiff's personal and professional reputation and present the potential for further damage to the Plaintiff's ability to be personally and financially successful in his legal profession within the State of New Jersey.

213.    The NJ Bar Complaint has caused severe damage to the character of the Plaintiff.

214.    The NJ Bar Complaint has caused the Plaintiff to be forced to hire yet another attorney to represent him in defending his character from the Bar of the State of New Jersey.

215.    Additionally, the false public statements made by the Defendants concerning the events of December 16-17, 2022, accusing the Plaintiff of being a dangerous sexual predator, a rapist and a coercive sexual deviant, have irrevocably damaged the Plaintiff.

Case ID: 230400452

216.     The repeated statements in furtherance of this untrue narrative as to Plaintiff at the hands of Defendants, have caused and will continue to cause harm to the Plaintiff's business and personal life.

**WHEREFORE**, Plaintiff, Edwin León, respectfully requests that this Honorable Court and the trier of fact find judgment in his favor and against Defendants, Cheyenne Goodman and Nehama Hanoch, in an amount in excess of $50,000.00, together with all fees, costs, interest and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## COUNT V – ASSAULT

## V. HANOCH DEFENDANT

217.     Plaintiff hereby incorporates paragraphs 1 through 216, above, by reference as though same were fully set forth at length herein.

218.     The Restatement of Torts, section 21 states that "(1) An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension."  Restatement of Torts, Section 21.

219.     In the early morning hours of December 17, 2022, the Hanoch Defendant intentionally struck the Plaintiff multiple times.

220.     Here, Hanoch has engaged in an assault which has caused the Plaintiff mental and physical harm.

221.     As a result of the assault, the Plaintiff has suffered emotional, physical and financial harm as more specifically averred above.

**WHEREFORE**, Plaintiff, Edwin León, respectfully requests that this Honorable Court and the trier of fact find judgment in his favor and against Defendants, Cheyenne Goodman

Case ID: 230400452

and Nehama Hanoch, in an amount in excess of $50,000.00, together with all fees, costs, interest and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## COUNT VI – ASSAULT

## V. GOODMAN DEFENDANT

222.    Plaintiff hereby incorporates paragraphs 1 through 221, above, by reference as though same were fully set forth at length herein.

223.    The Restatement of Torts, section 21 states that "(1) An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Restatement of Torts, Section 21.

224.    Starting in the fall of 2022, Goodman began publishing defamatory statements about the Plaintiff.

225.    Goodman made these false statement to her colleagues at YCST, including but not limited to the Hanoch Defendant.

226.    In the early morning hours of December 17, 2022, Goodman made statements to Hanoch that resulted in Hanoch believing that Plaintiff was threatening Goodman.

227.    As a result of Goodman's repeated lies to Hanoch about Plaintiff, specifically the statements made to Hanoch by Goodman, during the evening of December 16, 2022 and into the early morning hours of December 17, 2022, Hanoch intentionally struck the Plaintiff multiple times resulting in physical and emotional injury to Plaintiff.

228.    Here, Goodman has engaged in a pattern of behavior that was intended to cause imminent harm to the Plaintiff, and which in fact did result in the physical assault of the Plaintiff by Hanoch.

Case ID: 230400452

229.    The assault by Hanoch, which occurred as a result of the behavior of Goodman, has caused the Plaintiff physical, emotional and financial harm.

230.    As a result of the assault, the Plaintiff has suffered emotional and reputational damage.

**WHEREFORE**, Plaintiff, Edwin León, respectfully requests that this Honorable Court and the trier of fact find judgment in his favor and against Defendants, Cheyenne Goodman and Nehama Hanoch, in an amount in excess of $50,000.00, together with all fees, costs, interest and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

## COUNT VII – SLANDER *PER SE*

231.    Plaintiff hereby incorporate paragraphs 1 through 230, above, by reference as though same were fully set forth at length.

232.    On or about December 18, 2022, Hanoch filed a report or request with YCST in which she accused the Plaintiff of specific behavior and acts to harm Plaintiff's personal and business reputation despite knowing or having a reasonable belief they were false when made by Hanoch.

233.    On or about December 18, 2022, Hanoch and Goodman published statements about the evening of December 16-17, 2022 to YCST and alleged that the Plaintiff engaged in inappropriate conduct toward Goodman which they knew or should have known were false when made.

234.    Sometime in late December, Goodman, with the assistance of colleagues at YCTS, published to Plymouth Township police, false statements accusing the Plaintiff of criminal acts.

235.    Then, in early 2023, Goodman, with the support of Hanoch, filed a PFA against the Plaintiff in the State of Delaware.

Case ID: 230400452

236.     The PFA evidence presented by the Defendants included public disclosures about Plaintiff's personal life and personal information defaming the Plaintiff's character that were false when made, further alleging the Plaintiff of being engaged in a coercive sexual relationship with Goodman.

237.     The materially false PFA allegations resulted in severe damage to the Plaintiff's personal and professional reputation and ability to be personally and financially successful in his legal profession within the State of Delaware where he was employed.

238.     The PFA allegations resulted in severe damage to the character of the Plaintiff.

239.     Additionally, the false public statements made by the Defendants concerning the events of December 16-17, 2022, accusing the Plaintiff of being a dangerous sexual predator, a rapist and a coercive sexual deviant, have irrevocably damaged the Plaintiff.

240.     The repeated statements in furtherance of this untrue narrative as to Plaintiff at the hands of Defendants, have caused and will continue to cause harm to the Plaintiff's business and personal life.

241.     Then, in September of 2023, after the reissuance of the writ in the instant matter, Goodman, upon information and belief with the support of Hanoch, filed a complaint against the Plaintiff with the Bar of the State of New Jersey ("NJ Bar Complaint").

242.     The evidence presented by the Defendants included statements about Plaintiff's character that were false when made, further alleging the Plaintiff had engaged in evidence and witness tampering.

243.     The materially false NJ Bar Complaint resulted in severe damage to the Plaintiff's personal and professional reputation and present the potential for further damage to the Plaintiff's

Case ID: 230400452

ability to be personally and financially successful in his legal profession within the State of New Jersey.

244.    The NJ Bar Complaint has caused severe damage to the character of the Plaintiff.

245.    The NJ Bar Complaint has caused the Plaintiff to be forced to hire yet another attorney to represent him in defending his character from the Bar of the State of New Jersey.

**WHEREFORE**, Plaintiff, Edwin León, respectfully requests that this Honorable Court and the trier of fact find judgment in his favor and against Defendants, Cheyenne Goodman and Nehama Hanoch, in an amount in excess of $50,000.00, together with all fees, costs, interest and other relief permitted by law and/or deemed just and reasonable by this Honorable Court.

Respectfully submitted,

**PAX LEGAL, LLC**

Dated:  February 9, 2024                   By:  _____
Lida L. Bonner, Esq.
Neil M. Hilkert, Esq.
***Counsel for Plaintiff,***
Edwin León

34

Case ID: 230400452

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS OF PHILADELPHIA



Filed and Attested by the
Office of Judicial Records
09 FEB 2024 02:26 pm
C. PERRY

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. | Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente.  Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio.  Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association**<br>**Lawyer Referral**<br>**and Information Service**<br>**One Reading Center**<br>**Philadelphia, Pennsylvania  19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** | **Asociacion De Licenciados**<br>**De Filadelfia**<br>**Servicio De Referencia E**<br>**Informacion Legal**<br>**One Reading Center**<br>**Filadelfia, Pennsylvania  19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** |

Case ID: 230400452

## <u>VERIFICATION</u>

*Filed and Attested by the Office of Judicial Records 09 FEB 2024 02:26 pm C. PERRY*

I, Edwin León, hereby certify that I am the Plaintiff in the above matter, the foregoing *First Amended Complaint* and I verify that all the allegations contained in the foregoing Petition are true and correct to the best of my knowledge, information and belief. I understand that the statements contained therein are subject to the penalties for unsworn falsification to authorities set forth in 18 Pa. C.S. §4904.

Dated: <u>February 9, 2024</u>          <u>/S/ Edwin León</u>
                                     Edwin León