## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| EDWIN LEÓN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:24-cv-01060-WB |
| NEHAMA HANOCH | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHEYENNE GOODMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

AND NOW, this_____ day of _____, 2024, upon consideration of Defendant Cheyenne Goodman's Motion to Dismiss Plaintiff's Amended Complaint, together with any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. It is further **ORDERED** that Plaintiff's Amended Complaint is **DISMISSED** as to Ms. Goodman, with prejudice.

**BY THE COURT:**

_____
The Honorable Wendy Beetlestone
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWIN LEÓN,<br><br>Plaintiff,<br><br>v.<br><br>NEHAMA HANOCH<br><br>and<br><br>CHEYENNE GOODMAN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 2:24-cv-01060-WB |

## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

    Defendant Cheyenne Goodman, by and through her undersigned counsel, hereby moves for dismissal with prejudice of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support thereof, Ms. Goodman submits the accompanying memorandum of law.

Dated: March 18, 2024

                                               */s/* **Daniel Katz**
                                               Daniel Katz, Esquire
                                               121 S. Broad Street
                                               Suite 1300
                                               Philadelphia, PA 19107
                                               (267) 655-4167
                                               DannyWKatz@gmail.com

                                               *Attorney for Defendant Goodman*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWIN LEÓN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    No. 2:24-cv-01060-WB |
| NEHAMA HANOCH | ) |
| | ) |
| and | ) |
| | ) |
| CHEYENNE GOODMAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## CHEYENNE GOODMAN'S MOTION TO DISMISS

## TABLE OF CONTENTS

**INTRODUCTION** ………………………………………………………………………7

**RELEVANT ALLEGATIONS** …………………………………………………………..7

**LEGAL STANDARD** ………………………………………………………………...10

**ARGUMENT**

I.   **The Court Should Take Judicial Notice of the Delaware Court Opinions, which Contradict the Amended Complaint's Legal Conclusions and Factual Claims** ………..12

II.  **Plaintiff is Precluded from Relitigating the Truth of his Abuse of Ms. Goodman and the Events of December 16-17, 2022** ……………………………………………………...12

III. **The Amended Complaint Fails to State Claims for Defamation (Count IV) and Slander *Per Se* (Count VII)** ………………………………………………………………15

    a.  **The Amended Complaint Fails to Plead Defamatory Statements Made by Ms. Goodman** …………………………………………………………………..17

    b.  **The Amended Complaint Fails to Set Forth the Required Element of Special Harm** …………………………………………………………………20

    c.  **Ms. Goodman's Judicial and Conditional Privileges are Clear on the Face of the Amended Complaint** ……………………………………………………20

        a.  *Judicial Privilege* ……………………………...…………………………21

        b.  *Conditional Privilege* …………………………...…………………………22

IV.  **The Amended Complaint Fails to State a Claim for Invasion of Privacy (Count III)** . 22

V.   **The Amended Complaint Fails to State Claims for IIED (Count I) and NIED (Count II)** ……………………………………………………………………24

    a.  **Intentional Infliction of Emotional Distress** ……………………………………24

        i.   *Plaintiff Fails to Allege Outrageous Conduct* …………………...……………25

        ii.  *The Requisite Intent is Lacking* ………………………………………26

        iii. *Plaintiff Fails to Allege Ms. Goodman Caused Him Severe Distress* …………..26

    b.  **Negligent Infliction of Emotional Distress** …………..…………………………28

VI.  **The Amended Complaint Fails to State a Claim for Assault (Count VI)** ……………………………………………………..…….30

VII. **Plaintiff's Claims are Time-Barred** ……………………………………………31

**CONCLUSION** …..…………………………………………………………32

## TABLE OF AUTHORITIES

**Cases**

*In re Tower Air, Inc*., 416 F.3d 229, 238 (3d Cir. 2005)

*Dille Fam. Tr. v. Nowlan Fam. Tr.*, No. CV 15-6231, 2016 WL 7202073, at *1 (E.D. Pa. Apr. 21, 2016)

*In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997)

*Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 376 F. Supp. 3d 531, 537 (E.D. Pa. 2019)
*Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018)

*BSD-360, LLC v. Philadelphia Indem. Ins. Co.*, 580 F. Supp. 3d 92, 98 (E.D. Pa. 2022)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)

*Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

*VanLoan v. Nation of Islam*, No. CV 20-6112, 2021 WL 3630481, at *2 (E.D. Pa. Aug. 16, 2021)

*R.B. ex rel. Parent v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 753 (E.D. Pa. 2010)

*SEPTA v. Orrstown Fin. Servs*., 2016 U.S. Dist. LEXIS 169379, *15-16 (M.D. Pa. 2016).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp.* Ltd., 181 F.3d 410, 426–27 (3d Cir. 1999)

*Graham v. Jones*, No. 22-CV-2868, 2022 WL 3701983, at *1 (E.D. Pa. Aug. 26, 2022)

*Suber-Aponte v. Borough of Pottstown*, No. CV 15-1314, 2016 WL 5341299, at *8 (E.D. Pa. Sept. 23, 2016)

*Wallace v. State Farm Mut. Auto. Ins., Co*., No. CV 20-2264, 2020 WL 5232030, at *3 (E.D. Pa. Sept. 2, 2020)

*Tomas B. Bombadil & Co. v. Gail E. Gustafson & Co.*, No. 23-CV-2021, 2023 WL 4110065, at *2 (E.D. Pa. June 21, 2023)

*Leach v. Phelan Hallinan Diamond & Jones, LLP*, No. CV 19-3183, 2020 WL 1875631, at *8 (E.D. Pa. Apr. 15, 2020).

*Rajan v. Crawford*, No. CV 21-1456, 2022 WL 474454, at *7 (E.D. Pa. Feb. 16, 2022)

*Grimes v. Vitalink Commc'ns Corp.*, No. CIV. A. 92-2722, 1993 WL 56032, at *5 (E.D. Pa. Feb. 27, 1993)

*Weirton Medical Center, Inc. v. Introublezone, Inc*., 193 A.3d 967, 972-73 (Pa. Super. 2018)

*Houk v. Mitchell,* No. 10023 OF 2013, 2014 WL 12746879, at *3 (Pa. Com. Pl. July 29, 2014)

*Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 7429 (E.D. Pa. 2000)

*Baker v. Lafayette Coll*., 532 A.2d 399, 402 (Pa. 1987).

*Burton v. Teleflex Inc*., 707 F.3d 417, 434 (3d Cir. 2013)

*Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004)

*Cornell Companies, Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 271 (E.D. Pa. 2007)

*Clemente v. Espinosa*, 749 F. Supp. 672, 680 (E.D. Pa. 1990)

*Joyner v. Sch. Dist. of Philadelphia*, 313 F. Supp. 2d 495, 502 (E.D. Pa. 2004)

*Udodi v. Stern*, 438 F. Supp. 3d 293, 301 (E.D. Pa. 2020)

*Forbes v. King Shooters Supply*, 230 A.3d 1181, 1188 (Pa. Super. 2020)

*Schanne v. Addis*, 121 A.3d 942, 948 (Pa. 2015)

*Greenberg v. McGraw*, 161 A.3d 976, 988 (Pa. Super. 2017)

*Haagensen v. Supreme Ct. of Pennsylvania*, 651 F. Supp. 2d 422, 433 (W.D. Pa. 2009)

*Foster v. UPMC S. Side Hosp*., 2 A.3d 655, 664 (Pa. Super. 2010)

*Krajewski v. Gusoff*, 53 A.3d 793, 805 (Pa. Super. 2012)

*Neish v. Beaver Newspapers, Inc*., 581 A.2d 619, 624 (Pa. Super. 1990)

*Doe v. Wyoming Valley Health Care System, Inc*., 987 A.2d 758, 766 (Pa. Super. 2009)

*Feingold v. Hendrzak*, 2011 PA Super 34, 15 A.3d 937, 942 (2011).

*Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997)

*Wiltz v. Pazzalia*, 71 Pa. D. & C.4th 427, 437 (Com. Pl. 2004)

*Buczek v. First National Bank of Mifflintown*, 558, 531 A.2d 1122, 1125 (Pa. 1987)

*Cimbat v. Old Navy LLC*, No. CV 21-2657, 2022 WL 16553377, at *3 (E.D. Pa. Oct. 31, 2022)

*Bracke v. SiteOne Landscape Supply, LLC*, No. CV 21-5244, 2022 WL 1128951, at *5 (E.D. Pa. Apr. 15, 2022)

*Rusiewicz v. Chase*, 2014 WL 10752060, at *5 (Pa. Super. Ct. Dec. 18, 2014)

*Brown v. Sayors*, 2016 WL 3745223, at *5 (Pa. Commw. Ct. July 13, 2016)

*Foman v. Albert Einstein Med. Ctr.*, 2011 WL 10548535, at *6 (Pa. Com. Pl. Mar. 23, 2011)

*Miller v. Comcast Corp.*, 268 A.3d 446 (Pa. Super. Ct. 2021)

*Rolla v. Westmoreland Health Sys.*, 651 A.2d 160, 163 (Pa. 1994)

*Britt v. Chestnut Hill Coll.*, 632 A.2d 557, 561 (1993)

*Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987)

*Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 774 (2022).

*Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000).

*Hinchey v. Univ. of Pennsylvania Health Sys.*, 2013 WL 8596455, at *2 (Pa. Com. Pl. Apr. 24, 2013)

*Stock v. Braswell*, 2017 WL 3279059, at *8 (E.D. Pa. Aug. 2, 2017)

*D'Errico v. DeFazio*, 763 A.2d 424, 431 n.2 (Pa. Super. Ct. 2000)

*Cucinotti, Appellant v. Ortmann*, 399 Pa. 26, 27, 159 A.2d 216 (Pa. 1960)

*Thorsen v. Kaufmann's Dep't Stores*, 55 Pa. D. & C.4th 565, 569 (Com. Pl. 2000)

*Dice v. Johnson*, 711 F. Supp. 2d 340, 364 (M.D. Pa. 2010)

*Buonadonna v. Se. Delco Sch. Dist.*, No. CIV.A. 14-02708, 2015 WL 2365629, at *1 (E.D. Pa. May 18, 2015)

*Smith v. IMG Worldwide, Inc.*, 437 F. Supp. 2d 297, 303 (E.D. Pa. 2006)

*Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 628 (W.D. Pa. 2014)

*Heater v. Kispeace*, No. CIV.A. 05-4545, 2005 WL 2456008, at *1 (E.D. Pa. Oct. 5, 2005)

**Statutes**

28 U.S.C. § 1738.
**Other Authorities**

Rule 12(b)(6)

Restatement (Second) of Judgments § 27

Restatement (Second) Torts, § 652E

**<u>Exhibits</u>**

Exhibit A, Delaware Court Opinion

Exhibit B, Delaware Remand Opinion

Exhibit C, Plaintiff's Cross Petition

## INTRODUCTION

Last June, Edwin Leon (the "Plaintiff") was found by the Delaware Family Court (the "Delaware Court") to have perpetrated domestic violence against Cheyenne Goodman ("Ms. Goodman").[1]  He is now using this lawsuit, originally filed in the Court of Common Pleas, to retaliate against her and Nehama Hanoch ("Ms. Hanoch," and, together with Ms. Goodman and Plaintiff, the "Parties"), the friend who helped her escape his abuse.  Plaintiff's case is frivolous both legally and factually, as it rests on a convoluted conspiracy theory that Ms. Goodman invented stories of sexual abuse to protect Ms. Hanoch from the risk that Plaintiff might go to the police for allegedly assaulting him to protect Ms. Goodman from his abuse—which has already been rejected by the Delaware Court and on appeal.[2]  Legally, Plaintiff's Amended Complaint fails to state claims on all counts.  The Amended Complaint also should be dismissed based on defenses to various claims including (i) res judicata, (ii) collateral estoppel, (iii) privileges against the defamation, slander per se, and invasion of privacy claims (judicial and conditional), and (iv) the statute of limitations.  "A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face[.]"  *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005).

## RELEVANT ALLEGATIONS[3]

---

[1]  The history of the related Delaware PFA Action and the Plaintiff's abuse of Ms. Goodman is extensive; Ms. Goodman provides a condensed summary herein.

[2]  The opinions issued by the Delaware Court "may be considered on a motion to dismiss because [they are] document[s] 'integral to or explicitly relied upon in the complaint,'" and the Court's doing so does not convert the motion into a Rule 56 motion.  *Dille Fam. Tr. v. Nowlan Fam. Tr.*, No. CV 15-6231, 2016 WL 7202073, at *1 (E.D. Pa. Apr. 21, 2016) (Beetlestone, J.) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997)).  *See* Am. Compl. ¶¶ 158-63, 195 ("Goodman filed a PFA against the Plaintiff, on the basis of information that was false, which Goodman and Hanoch knew was false, with the intent to make this information public through the PFA litigation, and intending to do harm to the Plaintiff's personal and business reputation."); 205-09 (arguing the PFA petition was "defamatory").

[3]  The claims in the First Amended Complaint are accepted as true for the purposes of this motion only.  *See* Fed.R.Civ.P. 12(b)(6).  "To the degree that Plaintiff's exhibits "contradict [his] allegations in the complaint, the exhibits control."  *Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 376 F. Supp. 3d 531, 537 (E.D. Pa. 2019) (quoting *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018)).

The Parties previously worked together as associates at Young Conaway Stargatt & Taylor ("Young Conaway"), a law firm in Wilmington, Delaware. Am. Compl. ¶¶ 7-10, 20. Plaintiff and Ms. Goodman engaged in a brief consensual sexual relationship during the summer of 2022, which quickly turned abusive and non-consensual. *See* **Exhibit A**, a true and correct copy of the Delaware Court's opinion, at 46-48 (finding that Plaintiff abused and coerced Ms. Goodman).

On December 16, 2022, Plaintiff planned to join Young Conaway colleagues, including Ms. Hanoch and Ms. Goodman, for a night out in Philadelphia. *Id.* ¶¶ 43-45. Throughout the day (at a work event), Plaintiff continuously asked Ms. Goodman to go home with him at the end of the night—Ms. Goodman declined but continued to be "flirtatious" with Plaintiff because she did not want to anger him through this rejection. Ex. A, at 45 (Delaware Opinion) ("Ms. Goodman engaged in flirtatious behavior with [Plaintiff] the night of December 16-17, 2022 . . . The Court believed her explanation of not wanting to upset [Plaintiff] . . . by confronting him directly and telling him she wanted to go back to Wilmington."). Plaintiff did not accept Ms. Goodman's rejection, and in response subjected her to the acts of abuse that warranted Ms. Goodman's PFA against him. *Id.*, at 52. The Delaware Court summarized the events of December 16-17, 2022, as follows:

> [Plaintiff] committed acts of abuse pursuant to 10 Del. C. § 1041 (1) (b), (d), & (h). [Plaintiff] chased Ms. Goodman twice through Center City Philadelphia. Ms. Goodman contated her friends for help. [Plaintiff] faked a heart attack and asked her to call 911. Ms. Goodman repeatedly ran from [Plaintiff], He resumed his chase afterwards. Five witnesses saw Ms. Goodman on the ground, head between her legs, shaken, and struggling to breathe. Her emotional distress was apparent. The next day, [Plaintiff] coerced her into having oral sex with him after threatening to have criminal charges filed against Ms. Hanoch, threatening to file a lawsuit against Ms. Hanoch, and threatening to report Ms. Hanoch for professional discipline. [Plaintiff] also threatened to damage Ms. Goodman's reputation by exposing their relationship to her coworkers. [Plaintiff] pressured her to execute an affidavit. [Plaintiff] pressured her to text her coworkers to, "[m]ake it right." He gave her a deadline. Ms. Goodman broke down uncontrollably when asked if she had been raped that weekend in December 2022.

*Id.* (summarizing the findings of the Court).

8

More specifically, the Delaware Court found that, during Ms. Hanoch's alleged assault of Plaintiff, Plaintiff was abusing Ms. Goodman. *Id*., at 46-47. And, afterwards, in the early morning hours of December 17, 2022, Plaintiff, with coaching from his friend, Evie Boland, secretly recorded five (5) phone conversations with Ms. Goodman in which he tried to get Ms. Goodman to change her story of what transpired that evening (the "Recorded Calls"). *See* Am. Compl. ¶¶ 93-96, 98-100; 103-04 (arguing that the phone calls "prove" Ms. Goodman defamed him); Pl.'s Exs. P.1-4 (transcriptions of the Recorded Calls); *see also* **Exhibit B**, a true and correct copy of the Delaware Court's Remand Opinion (defined in further detail in n.5), at Conclusion (Delaware Remand Opinion).[4]  The next day, December 17, 2022, at Plaintiff's demand, Ms. Goodman went to his home where he orally raped her. Ex. A, at 47-48.  What Plaintiff described as being "intimate" in his Amended Complaint, Am. Compl. ¶ 119, the Delaware Court found to be sexual extortion under Delaware law, a Class E felony.  Ex. A, at 47-48 (Delaware Opinion).

It was then that Ms. Goodman could no longer hold in the abuse Plaintiff had been subjecting her to for months.  *See* Ex. A, at 15, 52 (Delaware Opinion) ("Afterwards [in reference to the December 17, 2022, rape] Ms. Goodman went to her mother's house.  She was crying.  She did not want to cry in front of her mother but she couldn't help herself . . . Ms. Goodman broke down uncontrollably when asked if she had been raped that weekend in December 2022").  On or about December 22, 2022, she reported Plaintiff—a former Pennsylvania State Trooper—to the Plymouth Township Police Department.  Am. Compl. ¶ 143.  And on January 3, 2023, she filed a petition for Protection from Abuse ("PFA") in the Delaware Family Court (the "Delaware Court") against Plaintiff (hereinafter, the "Delaware PFA Action") related, among other things, to the several acts of abuse Plaintiff committed against her on December 16-17, 2022.  Ex. A, at 52 (Delaware Opinion).

---

[4] The Delaware Remand Opinion does not have page numbers; accordingly, Ms. Goodman cites to the separate sections by header.  There are three pages in total.

Plaintiff filed a cross-petition alleging many of the same allegations in the Amended Complaint. *See* **Exhibit C**, a true and correct copy of Plaintiff's cross-petition (the "Cross-Petition"); *see also* Ex. A at 2, 32-41 (Delaware Opinion).  After a four-day bench trial, the Delaware Court granted Ms. Goodman's petition and denied Plaintiff's cross-petition.  *Id.*, at 2, 52 (Delaware Opinion).  In so holding, the Delaware Court found that Plaintiff committed several acts of abuse against Ms. Goodman on December 16-17, 2022, and that, while Ms. Goodman was credible, Plaintiff was not.  Ex. A, at 46-48 (Delaware Opinion).[5]

This retaliatory suit by Plaintiff followed.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint must set out 'a legally cognizable right of action' and 'enough facts' to make that cause of action 'plausible on its face.'"  *BSD-360, LLC v. Philadelphia Indem. Ins. Co.*, 580 F. Supp. 3d 92, 98 (E.D. Pa. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  The Court may grant a motion to dismiss for failure to state a claim upon which relief can be granted if, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (quoting *Oatway v. Am. Int'l Group, Inc.*, 325 F.3d 184, 187 (3d Cir. 2003)).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported

---

[5] Plaintiff filed a request for review of the commissioner's order ("ROCO"), and, on review, the findings as to credibility and Plaintiff's abuse were upheld.  On a request for review of a commissioner's order in the Delaware Court, a family court judge will review the findings of the commissioner.  The Honorable Judge Mary S. Much remanded the action for the limited purpose of authenticating and considering the Recorded Calls, evidence that Plaintiff argued was exculpatory. *See also* Am. Compl. ¶ 104.  The Delaware Court listened to the Recorded Calls and heard Plaintiff's testimony regarding the Recorded Calls.  The Delaware Court found that they were further evidence of Plaintiff's abuse of Ms. Goodman.  *See* **Exhibit B**, a true and correct copy of the Delaware Court's Remand Opinion, at Conclusion (Delaware Remand Opinion).

by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Nor is the Court required to accept as true "unsupported conclusions and unwarranted inferences." *VanLoan v. Nation of Islam*, No. CV 20-6112, 2021 WL 3630481, at *2 (E.D. Pa. Aug. 16, 2021) (dismissing state law claims backed "only with unwarranted inferences and speculation, not with factual allegations sufficient to support the 'reasonable inference that the defendant[s are] liable for the misconduct alleged'" (alteration in original) (internal citation omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *R.B. ex rel. Parent v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 753 (E.D. Pa. 2010) (alteration in original).

In resolving a motion to dismiss, the Court may consider "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record [and] orders[.]" *SEPTA v. Orrstown Fin. Servs.*, 2016 U.S. Dist. LEXIS 169379, *15-16 (M.D. Pa. 2016). Judicial proceedings fall under this "judicial notice" allowance where, as is the case here, the proceedings in the other court related to matters at issue before this Court. *Id.* Specifically, on a motion to dismiss, the Court "may take judicial notice of another court's opinion . . . [and] may therefore examine the decision to see if it contradicts the complaint's legal conclusions and factual claims." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp.* Ltd., 181 F.3d 410, 426–27 (3d Cir. 1999) (internal citations omitted); *see also Graham v. Jones*, No. 22-CV-2868, 2022 WL 3701983, at *1 (E.D. Pa. Aug. 26, 2022) ("The Court may take judicial notice of prior court proceedings.").

Where "amendment of [a] claim would be futile . . . it shall be dismissed with prejudice." *Suber-Aponte v. Borough of Pottstown*, No. CV 15-1314, 2016 WL 5341299, at *8 (E.D. Pa. Sept. 23, 2016); *see also Wallace v. State Farm Mut. Auto. Ins., Co.*, No. CV 20-2264, 2020 WL 5232030, at *3 (E.D. Pa.

11

Sept. 2, 2020) ("Because Plaintiff's case is wholly barred by claim preclusion, and is frivolous, amendment would be futile.").

## ARGUMENT

**VIII. The Court Should Take Judicial Notice of the Delaware Court Opinions, which Contradict the Amended Complaint's Legal Conclusions and Factual Claims.**

Not only does the Amended Complaint incorporate the Delaware PFA Action by several references, but it is also integral to Plaintiff's several claims. *See* Am. Compl. at ¶¶ 158-63, 195, 205-09, 235-38 (generally alleging that Defendants' testimony and the pleadings in the Delaware PFA Action constituted defamation, slander *per se*, invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress). Further, the matters at issue before this Court—the events of December 16-17, 2022, and the truth of the Plaintiff's abuse of Ms. Goodman—were the exact matters before the Delaware Court. Accordingly, the Court may, and should, take judicial notice of the Delaware Opinion and the Delaware Remand Opinion, the contradictions therein to the Amended Complaint's legal conclusions and factual claims. These contradictions include, *inter alia*: (i) the truth of the fact that Plaintiff abused Ms. Goodman and was actively abusing her at the time of Ms. Hanoch's alleged assault, Ex. A, at 46; (ii) the "absurd," "concerning," "frivolous," and "utterly unbelievable" nature of Plaintiff's allegations (which are realleged in this Action), Ex. A, at 43-44 (Delaware Opinion); (iii) the rejection of Plaintiff's fanciful conspiracy theory that Ms. Goodman (in concert with Ms. Hanoch) fabricated the abuse to protect Ms. Hanoch from Plaintiff's assault claim, (which Plaintiff advanced in defense of Ms. Goodman's petition), Ex. A, at 42-46 (generally finding that Plaintiff's claims were not credible, while Ms. Goodman's were), Am. Compl. ¶¶ 107, 111, 134; and (iv) most heinously, that the act which Plaintiff described as "being intimate," Am. Compl. at ¶ 119, was abuse that amounted to Sexual Extortion, a Class E Felony under Delaware Law. Ex. A, at 47-48 (Delaware Opinion).

**IX. Plaintiff is Precluded from Relitigating the Truth of his Abuse of Ms. Goodman and the Events of December 16-17, 2022.**

"A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face[.]"  *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005).

Where, as is the case here, the affirmative defense is apparent on the face of the complaint, dismissal is proper.  *Tomas B. Bombadil & Co. v. Gail E. Gustafson & Co.*, No. 23-CV-2021, 2023 WL 4110065, at *2 (E.D. Pa. June 21, 2023) (Beetlestone, J.) (internal citations and quotation marks omitted) (also holding that the court may look beyond the complaint to public records, including judicial proceedings).  When a case has previously been adjudicated in a state court, federal courts are required to give full faith and credit to the state court judgment pursuant to 28 U.S.C. § 1738.  *Leach v. Phelan Hallinan Diamond & Jones, LLP*, No. CV 19-3183, 2020 WL 1875631, at *8 (E.D. Pa. Apr. 15, 2020). In doing so, federal courts apply "the same preclusion rules as would the courts of" the state at issue.  *Id.* Accordingly, Delaware preclusion rules apply.

Under Delaware law, preclusion applies where: (1) the issue of fact decided in the prior adjudication is identical to the one presented; (2) there is a final judgment on the merits; (3) the party against whom collateral estoppel is asserted is a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior adjudication.  *Rajan v. Crawford*, No. CV 21-1456, 2022 WL 474454, at *7 (E.D. Pa. Feb. 16, 2022), *aff'd in part, vacated in part on other grounds, remanded*, No. 22-1719, 2022 WL 16646690 (3d Cir. Nov. 3, 2022).  Preclusion applies whether the later action raises the same or a different claim.  *Id.*; *see also,* Restatement (Second) of Judgments § 27.

**First**, the issues of fact presented in the Amended Complaint and decided in the Delaware Court are identical.  In the Delaware Court, Ms. Goodman alleged, among other things, that: (i) Plaintiff abused her on Friday, December 16, 2022, by chasing her, grabbing her, and causing her to have a severe panic attack; (ii) Plaintiff abused her on Saturday, December 16, 2022, when he orally raped her under threat of, *inter alia*, filing **this exact** frivolous Action; and (iii) Plaintiff berated her in the Recorded Calls and

demanded she change her story as to what happened on December 16, 2022.  Ex. A, at 42-52 (Delaware Opinion); Ex. B, at Conclusion (Delaware Remand Opinion).

Plaintiff, in turn, alleged that: (i) Ms. Goodman "sent" Ms. Hanoch to physically assault him on Friday, December 17, 2022; (ii) Ms. Goodman assaulted him on Friday, December 17, 2022; (iii) Ms. Goodman claim's that Plaintiff was sexually harassing her were false; (iii) Ms. Goodman was fabricating the abuse and rape allegations as part of a conspiracy to somehow shield Ms. Hanoch from Plaintiff's frivolous assault allegations; (iv) Ms. Goodman would tell others "falisities" about Plaintiff's sexual preferences; and (iv) Ms. Goodman was attempting to "assassinate his reputation." Ex. A at 16-17, 41 (Delaware Opinion); *see also*, Ex. C, at ¶¶ a, h (Cross-Petition).

**Second**, the Delaware Court issued the Order and Delaware Opinion after a full and fair trial. The Delaware Opinion has not been overturned.  The Delaware Remand Opinion has similarly not been overturned.  Accordingly, they constitute a final judgment on the merits.

**Third**, Plaintiff was indisputably a party to the Delaware PFA Action.

**Fourth**, Plaintiff was afforded a full and fair opportunity to litigate these several issues in the Delaware PFA Action.  In the course of the Delaware PFA Action, Plaintiff deposed both Defendants, took extensive discovery from several people and entities, filed a motion to dismiss which was denied, cross-examined Ms. Goodman *twice*, examined seven (7) third-party witnesses, set forth nearly a thousand (1,000) pages of documentary exhibits, admitted hours of video evidence into the record; and on remand, admitted several Recorded Calls into the record (transcriptions of portions of some, but not all, of the Recorded Calls are attached to his Amended Complaint as Exhibits P.1-4..  *See* Ex. A at 2 (Delaware Opinion); *see also*, Ex. B at Introduction (untitled) (Delaware Remand Opinion).  Plaintiff was thus heard not once, but twice, regarding the truth of statements he now alleges were defamatory, and he lost both times.  Accordingly, Plaintiff's claims should be dismissed with prejudice.  *See Wallace v. State Farm Mut. Auto. Ins., Co.*, No. CV 20-2264, 2020 WL 5232030, at *2–3 (E.D. Pa. Sept. 2, 2020).

Plaintiff now raises the same claims, despite the clear presence of preclusion, in an attempt to have the Court review the propriety of the Opinions.  The Court, however, must give full faith and credit to what the Delaware Court has lawfully found and ordered.  28 U.S.C. § 1738 (1988); *Grimes v. Vitalink Commc'ns Corp.*, No. CIV. A. 92-2722, 1993 WL 56032, at *5 (E.D. Pa. Feb. 27, 1993) (refusing to review the propriety of a class certification and settlement approved by the Delaware Chancery Court).  Accordingly, Plaintiff is precluded from relitigating the issues of (i) whether he abused Ms. Goodman on Friday, December 16, 2022, at the time of Ms. Hanoch's alleged assault; (ii) whether he abused Ms. Goodman in his home on December 17, 2022; (iii) whether Ms. Goodman's allegations of abuse were true or were fabricated in a conspiracy with Ms. Hanoch; (iv) whether the Recorded Calls prove that Ms. Goodman defamed him; and (v) whether Ms. Goodman spread falsities that Plaintiff sexually harassed her, and related to Plaintiff's sexual preferences.  As these allegations serve as the basis for every claim in the Amended Complaint, each claim fails.

## X.      The Amended Complaint Fails to State Claims for Defamation (Count IV) and Slander *Per Se* (Count VII).

Under Pennsylvania law, for a defamation claim to survive a motion to dismiss, a plaintiff must plead a statement that:  (i) was of defamatory character; (ii) was published by the defendant; (iii) applied to the plaintiff; (iv) had a defamatory meaning that was understood by recipients; (v) was understood by recipients to apply to the plaintiff; (vi) caused special harm to the plaintiff; and (vii) there was, if applicable, abuse of a conditional privilege.  *Weirton Medical Center, Inc. v. Introublezone, Inc*., 193 A.3d 967, 972-73 (Pa. Super. 2018) (citing 42 Pa.C.S. § 8343(a)).  Under Pennsylvania law, slander *per se* includes defamatory publications that impute "(a) a criminal offense (b) a loathsome disease (c) matter incompatible with his business trade, profession, or office or (d) serious sexual misconduct."  *Houk v. Mitchell,* No. 10023 OF 2013, 2014 WL 12746879, at *3 (Pa. Com. Pl. July 29, 2014) (cleaned up) (citing Restatement (Second) Torts § 570).

A complaint, on its face, must "specifically identify what allegedly defamatory statements were made[,] by whom[,] and to whom." *Rajan v. Crawford*, No. CV 21-1456, 2022 WL 474454, at *11 (E.D. Pa. Feb. 16, 2022) (quoting *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 7429 (E.D. Pa. 2000)). Lacking this specificity, a defamation count must be dismissed. *Rajan*, 2022 WL 474454, at *7.

As a threshold matter, "the trial court must, in the first instance, make a determination as to whether the communication complained of can be construed to have the defamatory meaning ascribed to it by the complaining party." *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987). To be defamatory, a statement "must do more than merely annoy or embarrass the purported victim; 'he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 434 (3d Cir. 2013) (quoting *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004)).

"To the degree that Plaintiff's exhibits "contradict [his] allegations in the complaint, the exhibits control." *Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 376 F. Supp. 3d 531, 537 (E.D. Pa. 2019) (quoting *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018))."

The Amended Complaint fails on all fronts. The Plaintiff does not—and cannot—identify any actual specific defamatory communications uttered by Ms. Goodman to another concerning the Plaintiff. Accordingly, the Court cannot perform its initial function of determining whether the communication complained of has defamatory meaning because no communication has been complained of. Additionally, these vague, conclusory allegations are insufficient to put Ms. Goodman on notice of the allegations they must respond to. The Amended Complaint merely repeats the Plaintiff's tired conspiracy theories, conclusory allegations, and wild suspicions that are not only unsubstantiated—but which have already been rejected by *two* courts. *See supra*, Argument about Preclusion.

While the Amended Complaint fails to plead special harm or identify a single ***specific statement*** made by either Defendant, let alone one that would meet the elements of defamation or slander *per se*,

what it does show is that Ms. Goodman's alleged statements are protected by judicial and conditional privilege.

i.   **The Amended Complaint Fails to Plead Defamatory Statements Made by Ms. Goodman**

The Amended Complaint falls woefully short of this pleading standard—failing to identify ***any*** specific defamatory statements by Ms. Goodman.   Read in a light most favorable to Plaintiff, the following paragraphs of the FAC are the only paragraphs possibly referring to generalized statements by Ms. Goodman are:  Am. Compl. at ¶¶ 23, 33, 36, 37, 39,41, 97, 103, 124, 133-135, 143, 146, 148-149, 158, 165, 167, and statements set forth or referenced in the Counts (¶¶ 202, 204, 233-235, 237, 256).

**Paragraph 23** fails to specify anything beyond that Ms. Goodman shared, "with others," "a story that she was being stalked and harassed by the Plaintiff."  Plaintiff alleges no specific statements.  The exhibit "E" the Plaintiff cites in support of this contention contains no such statements, and the recipients are not specified.  **Paragraph 33** likewise alleges without specificity that "Ms. Goodman repeatedly told Ms. Hanoch that the Plaintiff was stalking her."  Plaintiff does not allege what Ms. Goodman's specific statement was, and Plaintiff's referenced exhibits contain no such statements.  **Paragraph 36** merely alleges that "Ms. Goodman shared with Ms. Hanoch false information about the Plaintiff," but fails to provide any specific statement, or when they were made.  The referenced exhibits contain no such statements.  **Paragraph 37** vaguely references only a "narrative" that made Plaintiff seem like someone Goodman would need protection from; neither a recipient, nor a specific statement, is specified.  **Paragraph 39** alleges "[u]pon information and belief, Ms. Goodman apparently published a false narrative to Ms. Hanoch that the Plaintiff drugged Ms. Goodman[.]"  Plaintiff goes on to claim that Ms. Hanoch "under oath, states that the Plaintiff drugged Ms. Goodman[.]"  However, Plaintiff provides no specific statement on the part of ***Ms. Goodman***, and the referenced exhibits (K and L) contain no such statements by Ms. Goodman other than that she felt woozy and woke up in Plaintiff's bed with his clothes on.  Am. Compl., Ex. L, 60:13-61:3.  Plaintiff's own exhibit K supports this version of events and

17

showcases Ms. Goodman's confusion and fear that she did not know what happened to her.  At most, Ms. Hanoch's deposition supports that Ms. Goodman became inexplicably ill after drinking something at Plaintiff's home, and opined concern about the source of her illness.  Whether Plaintiff thinks this concern was reasonable, mere opinion, of course, is not defamation.  *Balletta v. Spadoni*, 47 A.3d 183, 198 (Pa. Commw. Ct. 2012) (opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified, unreasonable, or derogatory).

**Paragraph 41** merely vaguely references "fabrications," and **Paragraph 97** merely vaguely references "false stories." No specific statement, speaker, or recipient is identified.  Am. Compl. at ¶¶ 41, 97.  **Paragraph 103** alleges "Ms. Goodman has repeatedly published the statement that the Plaintiff, on [the illegally Recorded Calls], demanded that Ms. Goodman manipulate or falsify evidence, including but not limited to, publishing this statement to [Young Conaway], colleagues[,] [sic] and the New Jersey Bar." Am. Compl. at ¶ 103.  Plaintiff provides no specific statements, and the referenced exhibits contain no such statements. *Id*.  Indeed, the bar grievance the Plaintiff attached to his Amended Complaint as Exhibit Z does not contain any statement made by Ms. Goodman that the Plaintiff attempted to do such things in the Recorded Calls.  Pl's Ex. Z.  Further, as discussed above, Plaintiff is precluded from relitigating the fact that he attempted to berate her into providing a false narrative of the events of December 16, 2022, on the Recorded Calls.  *See supra*, Argument on Preclusion; *see also*, Ex. B at Conclusion (Delaware Remand Opinion).

**Paragraph 124** states merely that Ms. Goodman "proceeded to tell colleagues that she was sexually assaulted by the Plaintiff" and generally references Exhibit S, which does not include any such statements made by Ms. Goodman.  Am. Compl. at ¶ 124; Pl's Ex. S.  Plaintiff does not specify the exact statement Ms. Goodman purportedly made. Am. Compl. at ¶  124. **Paragraph 133** alleges "the Defendants and their [Young Conaway] colleagues with whom they were socializing that December evening decided to collectively paint the Plaintiff as a deviant, aggressive, sexual stalker in order to

justify the assault by [Ms. Hanoch] on the Plaintiff." Am. Compl. at ¶ 133. Again, the Plaintiff specifies no such statement, or two whom any such statement was made, and the referenced exhibit contains no such statements—it is a text message thread that does not include Ms. Goodman. *Id*. **Paragraphs 134-35**, and **148-49,** specify none of the alleged "collectively made" "false statements," and does not specifically allege to whom they were made: the alleged recipients are described vaguely as shared friends and coworkers and people with whom Plaintiff collaborated. Id., at ¶¶ 134-35, 148-49.

Paragraph **143** identifies none of the specific statements Ms. Goodman allegedly made to Plymouth Township Police but only that she and a senior attorney from Young Conaway reported a sexual assault by Plaintiff. *Id*., at ¶ 143. **Paragraph 146** vaguely states that Ms. Goodman maintained that the police investigation was ongoing despite allegedly knowing it was over; it identifies no recipients. *Id*., at ¶ 146. This allegation is also defeated by Plaintiff's own Exhibit W (showing that the decision to close the investigation occurred in June). Pl's Ex. W. Further, the alleged statement that a police investigation has not closed is not defamatory, nor does it reference Plaintiff. **Paragraphs 158, 235-37** allege generally that Ms. Goodman filed a PFA "along with multiple pleadings," and that the evidence and allegations were defamatory but identifies no specific statements and fails to even append them to the Amended Complaint. Am. Compl. at ¶¶ 235-37. **Paragraphs 202 and 233** allege only that Defendants stated vaguely that Plaintiff "engaged in inappropriate conduct toward Goodman," identifying no statements; the only recipient identified is "YCST," (Young Conaway) the Parties' then-employer—no specific individual within Young Conaway is identified. *Id*., at ¶¶ 202, 233. Likewise, Plaintiff fails in **paragraphs 204 and 234**, in the defamation count, to provide any specifics, and instead vaguely mentions "false statements accusing the Plaintiff of criminal acts" made in "late December" by Ms. Goodman and Young Conaway "colleagues." *Id*., at ¶¶ 2-4, 234. The recipient(s) is described only vaguely as "Plymouth Township police." *Id*.

Even after amending, Plaintiff has failed to specify any defamatory (or slanderous) statements by Ms. Goodman.  Plaintiff's threadbare recitals of the elements of defamation and his conclusory statements do not suffice to meet the pleading standard.  *Ashcroft,* 556 U.S. at 678.

### ii.     The Amended Complaint Fails to Set Forth the Required Element of Special Harm.

Plaintiff must show "special harm." 42 Pa. Cons. Stat. § 8343(a). "[A] plaintiff must plead a **specific monetary or out-of-pocket loss as a result of the defamation**." *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 271 (E.D. Pa. 2007) (internal quotation marks and citation omitted) (emphasis added). "Special harm" is "actual and concrete damages capable of being estimated in money[.]" *Clemente v. Espinosa*, 749 F. Supp. 672, 680 (E.D. Pa. 1990) (internal quotation marks and citation omitted).  The Amended Complaint flunks this element, providing only vague references that the Delaware PFA Action cost Plaintiff "thousands of dollars," Am. Compl. ¶ 162; how as a result of those proceedings Plaintiff is unable to schedule his character and fitness interview with the Delaware bar, *id.* ¶¶ 157, 207, 212; "financial harm," *id.* ¶¶ 22, 229, 237, 243; and Plaintiff's decision to hire multiple attorneys. *Id.* ¶¶ 150, 214, 245.  These vague, conclusory, and unsubstantiated allegations fall short of the pleading standard.

Moreover, Plaintiff waived any right he may have had to seek attorney's fees in the Delaware PFA Action by failing to seek them in that action.  Ex. C, at 8 (Cross-Petition) (Plaintiff fails to circle request for reimbursement of attorney's fees in his Delaware PFA Action Cross-Petition).

### iii.    Ms. Goodman's Judicial and Conditional Privileges are Clear on the Face of the Amended Complaint.

Courts may rely on privileges to dismiss defamation claims. *See, e.g., Joyner v. Sch. Dist. of Philadelphia*, 313 F. Supp. 2d 495, 502 (E.D. Pa. 2004) (dismissing defamation claim based on judicial privilege); *Udodi v. Stern*, 438 F. Supp. 3d 293, 301 (E.D. Pa. 2020) (dismissing defamation claim based on failure to meet element of abuse of conditional privilege).

20

Ms. Goodman's alleged statements to police, in the Delaware PFA Action, and in the New Jersey Office of Attorney Ethics ("NJ OAE") disciplinary proceedings are all subject to an absolute **judicial privilege.**  Ms. Goodman's alleged statements made to Young Conaway are subject to a **conditional privilege,** which was not abused.

> a.   *Judicial Privilege*

"A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face[.]"  *In re Tower Air, Inc*., 416 F.3d 229, 238 (3d Cir. 2005).  Statements made in court proceedings and to police fall within the absolute judicial privilege**.**  *Forbes v. King Shooters Supply*, 230 A.3d 1181, 1188 (Pa. Super. 2020) (citing and quoting *Schanne v. Addis*, 121 A.3d 942, 948 (Pa. 2015).  The privilege extends to pleadings and less formal communications such as preliminary conferences and communications between counsel.  *Forbes*, 230 A.3d at 1188.  It applies to professional disciplinary committees, such as bar disciplinary committees.  *See, e.g.*, *Greenberg v. McGraw*, 161 A.3d 976, 988 (Pa. Super. 2017) (medical disciplinary committee); *Haagensen v. Supreme Ct. of Pennsylvania*, 651 F. Supp. 2d 422, 433 (W.D. Pa. 2009), *aff'd sub nom*. *Haagensen v. Supreme Ct. of Penn*., 390 F. App'x 94 (3d Cir. 2010) (bar disciplinary board members enjoy judicial immunity).  Indeed, a grievance form Ms. Goodman filled out as part of those proceedings, which Plaintiff attaches as Exhibit Z, assures complainants they "have immunity from suit for anything you say or write to disciplinary officials," as long as the grievant "maintain[] the confidentiality of the investigatory process."  Pl.'s Ex. Z (citing *R.M. v. Supreme Court of New Jersey*, 185 N.J. 108 (2005)).   The judicial privilege also covers statements made to the police if made to persuade them "to initiate criminal proceedings."  *Schanne*, 121 A.3d at 948.  This privilege is absolute and does not depend on the speaker's motive; even maliciously false statements are protected.  *Forbes*, 230 A.3d at 1188.

This Court should, therefore, dismiss the defamation claims based on the alleged statements Plaintiff refers to (vaguely) that were made by Ms. Goodman to police (*see, e.g.*, Am. Compl. ¶¶ 78, 143,

204, 234); as part of the PFA process (*see, e.g., id.* ¶¶ 39, 158-163); or as part of the NJ OAE disciplinary proceedings (*see, e.g., id.* ¶¶ 165-167, and Pl.'s Ex. Z).

   *b.* *Conditional Privilege*

  Conditional privilege applies when an employer's workers communicate with each other in connection with their involvement in the discipline or termination of a fellow employee.  *Foster v. UPMC S. Side Hosp.*, 2 A.3d 655, 664 (Pa. Super. 2010).  This privilege may be overcome **only if** the statements are made maliciously, that is, only if the speaker knows the statement are false and intends harm.  *Id.* All the statements Ms. Goodman allegedly made to Young Conaway were made in the course of a **disciplinary matter** they were involved in.  *See, e.g.*, Am. Compl. ¶¶ 125, 138-39.

  The Plaintiff appears to allege that Ms. Goodman reported the abuse the Plaintiff subjected Ms. Goodman to, such a report cannot serve as the basis for a defamation or slander *per se* claim because it is **true** that the Plaintiff abused Ms. Goodman, and Plaintiff is precluded from relitigated the truth of the abuse, as discussed *infra*, Argument on Preclusion.[6]  Accordingly, there was no abuse of the conditional privilege because Ms. Goodman did not make false statements and it is clear on the face of the Amended Complaint that the conditional privilege cannot be overcome.  Thus, Plaintiff cannot succeed on the "abuse of a conditionally privileged occasion" elements of defamation and slander *per se*, and this Court must dismiss the Amended Complaint for failure to state a claim.  *See Weirton Medical Center, Inc. v. Introublezone, Inc.*, 193 A.3d 967, 972-73 (Pa. Super. 2018) (citing to 42 Pa.C.S. § 8343(a)).

**XI.** **The Amended Complaint Fails to State a Claim for Invasion of Privacy (Count III)**

 Even after Plaintiff's opportunity to amend, the Amended Complaint fails to notify Ms. Goodman or the Court what theory of invasion of privacy the Plaintiff is attempting to plead.  A cause of action for false light invasion of privacy is "comprised of four analytically distinct torts: 1) intrusion upon seclusion, 2) appropriation of name or likeness, 3) publicity given to private life, and 4) publicity placing

---

[6] The Amended Complaint lacks the requisite specificity as to what specific statements Ms. Goodman allegedly made to Young Conaway.

a person in a false light." *Krajewski v. Gusoff*, 53 A.3d 793, 805 (Pa. Super. 2012).  Only the last two torts are even remotely colorable here: (i) publicity placing a person in a false light and (ii) publicity given to private life.  Plaintiff fails under *either* theory.  False light requires Plaintiff allege that Ms. Goodman "had knowledge of or acted in reckless disregard as to the falsity."  Restatement (Second) Torts, § 652E; *see also Neish v. Beaver Newspapers, Inc.*, 581 A.2d 619, 624 (Pa. Super. 1990), *alloc. denied*, 593 A.2d 421 (Pa. 1991).  Further, "[p]ublicity means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.  Thus, it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Doe v. Wyoming Valley Health Care System, Inc.*, 987 A.2d 758, 766 (Pa. Super. 2009).

    Save for the Delaware PFA Action, the Amended Complaint contains no allegations that Ms. Goodman spoke with more than a handful of people.  *See Doe*, 987 A.2d at 766 (Pa. Super. 2009) (requirement of publicity means that information must be communicated "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge").  Rather, the Plaintiff merely concludes, without alleging any factual support, that "Defendants have published information about the Plaintiff to the general public."  Am. Compl., at ¶ 197.  Plaintiff does not identify what information, when it was purportedly published, or even how it was purportedly published.  Am. Compl., at Count III.  This mere conclusory statement is insufficient to state a claim.  *Feingold v. Hendrzak*, 2011 PA Super 34, 15 A.3d 937, 942 (2011).  Regarding the statements Ms. Goodman made during the Delaware PFA Action, to the police, and to the NJ OAE, Ms. Goodman has judicial immunity for any and all such statements.  *See Doe v. Wyoming Valley Health Care Sys., Inc.*, 987 A.2d 758, 767–68 (Pa. Super. 2009) (ruling that judicial privilege applies to false light invasion of privacy claims).  Judicial immunity would also bar any claim for "publicity given to

private life" related to the Delaware PFA Action.  *See id; see also Schanne v. Addis*, 121 A.3d 942 (Pa. 2015).

Further, the element of falsity as to any statements by Ms. Goodman cannot be met, as explained *supra:* the Delaware Court ruled that Plaintiff abused her—and that her statements regarding this abuse were true.  Ex. A., 46-52.  Plaintiff is precluded from relitigating this issue.  *See infra*, Argument on Preclusion.

The Amended Complaint itself shows that it is *impossible* for Plaintiff to recover on a false light claim or publicity to private life claim.  Accordingly, the Court should dismiss the "invasion of privacy" claim, without leave to amend.

**XII.    The Amended Complaint Fails to State Claims for IIED (Count I) and NIED (Count II).**

   **i.     Intentional Infliction of Emotional Distress.**

To state a claim for intentional infliction of emotional distress in Pennsylvania, each of the following elements must be alleged: "(1) The conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe."  *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997).  Plaintiff's Amended Complaint fails to allege any of these elements against Ms. Goodman.

The Superior Court has noted that, in Pennsylvania, "this action [for IIED] has been found to lie in only a limited number of cases."  *Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa. Super. 83, 91–92, 546 A.2d 1168, 1172 (1988) (citing cases); *see also Wiltz v. Pazzalia*, 71 Pa. D. & C.4th 427, 437 (Com. Pl. 2004) (noting that "[t]he paucity of cases which have found a sufficient basis for an IIED claim have presented the most extreme instances of exceedingly egregious conduct." (citation omitted)).  "[C]ourts have been chary to allow recovery for a claim of intentional infliction of emotional distress.  Only if conduct which is extreme or clearly outrageous is established will a claim be proven.  Indeed our Superior Court has noted, '[t]he conduct must be so outrageous in character, and so extreme in degree,

24

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Hoy v. Angelone*, 720 A.2d 745, 753–54 (1998) (quoting *Buczek v. First National Bank of Mifflintown*, 558, 531 A.2d 1122, 1125 (Pa. 1987)); *see also Cimbat v. Old Navy LLC*, No. CV 21-2657, 2022 WL 16553377, at *3 (E.D. Pa. Oct. 31, 2022). "Described another way, it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy*, 720 A.2d, at 753-54 (cleaned up) (quoting Restatement (Second) of Torts § 46, comment d). As a general matter, false allegations of criminal conduct are, without more, insufficiently outrageous to support a claim for intentional infliction of emotional distress. *Bracke v. SiteOne Landscape Supply, LLC*, No. CV 21-5244, 2022 WL 1128951, at *5 (E.D. Pa. Apr. 15, 2022).

> a. *Plaintiff Fails to Allege Outrageous Conduct.*

Plaintiff alleges that the following conduct supports his claim for IIED against Ms. Goodman: that she defamed him, that Ms. Hanoch assaulted him, and that their conduct was part of an elaborate "cover-up," Am. Compl. ¶ 169-72. None of these flimsy allegations and unwarranted inferences are sufficient to pass the high bar for outrageous conduct.

Plaintiff first alleges that Ms. Goodman's conduct was outrageous because she defamed him by filing a report and claiming he was dishonest and dangerous. *See, e.g.*, *id.* ¶¶ 108, 138, 148. *First*, merely accusing someone of inappropriate or even criminal conduct does not constitute outrageous conduct. *See, e.g.*, *Rusiewicz v. Chase*, 2014 WL 10752060, at *5 (Pa. Super. Ct. Dec. 18, 2014) (affirming dismissal of intentional infliction of emotional distress claim alleging that defendant accused plaintiff of crime of forgery because "this is only defendant's opinion as to how the behavior should be characterized. This characterization does not constitute extreme and outrageous conduct."); *Bracke*, 2022 WL 1128951, at *5. *Second*, Plaintiff's allegation that Ms. Goodman made a report to their

employer does not constitute outrageous conduct. *See Brown v. Sayors*, 2016 WL 3745223, at *5 (Pa. Commw. Ct. July 13, 2016) (dismissing IIED claim because the plaintiff failed to allege "outrageous conduct" for filing an allegedly false misconduct report); *Foman v. Albert Einstein Med. Ctr.*, 2011 WL 10548535, at *6 (Pa. Com. Pl. Mar. 23, 2011) (affirming dismissal because it was not outrageous for defendants to conduct an investigation to protect employees in response to a perceived threat even where plaintiff was ultimately cleared of wrongdoing in her criminal trial). *Third*, Plaintiff's unsupported suspicions that Ms. Goodman's conduct was part of a conspiratorial "cover-up," Am. Compl. ¶ 172, are insufficient to show outrageous conduct. *See VanLoan*, 2021 WL 3630481, at *2 ("Even on a motion to dismiss, we are not required to credit mere speculation."); *see also Miller v. Comcast Corp.*, 268 A.3d 446 (Pa. Super. Ct. 2021) (no outrageous conduct where allegations contained mere opinions, suspicions, and accusations); *Feingold*, 15 A.3d at 942 (dismissing IIED claim that "contain[ed] nothing more than conclusory[,] unsubstantiated suspicions and allegations that [Appellees] engaged in improper and fraudulent conduct" (alterations in original)). Accordingly, as Plaintiff's IIED claim against Ms. Goodman rests on his defamation and slander *per se* claims, it must fail.

This Court can end the analysis here and dismiss Plaintiff's frivolous IIED claim with prejudice for failing to allege outrageous conduct. However, Plaintiff's Count I should be dismissed for the additional reason that he fails to allege the remaining elements of IIED.

> b. *The Requisite Intent is Lacking.*

Plaintiff fails to allege Ms. Goodman's conduct was intentional or reckless because he is precluded from relitigating the truth of the fact that he abused her. *See infra*, Argument on Preclusion. Plaintiff further fails to allege that Ms. Goodman, or Ms. Hanoch, acted with intent to, or with reckless disregard of the possibility would, cause Plaintiff severe emotional distress. Am. Compl., Count I.

> c. *Plaintiff Fails to Allege Ms. Goodman Caused Him Severe Distress*

Plaintiff's bare allegations that he feared the consequences of his own actions and suffered "additional anxiety and severe emotional distress," Am. Compl. ¶¶ 176-78, are insufficient to show severe distress because they do not describe the physical harm Plaintiff suffered or the time at which he suffered them in relation to the alleged outrageous conduct. *See Rolla v. Westmoreland Health Sys.*, 651 A.2d 160, 163 (Pa. 1994) ("Since appellant did not allege in his complaint that he suffered any physical injury as a result of his 'humiliation and embarrassment and mental anguish,' he may not recover for that alleged distress whether it was intentionally or negligently inflicted."). These allegations are also insufficient to show that Ms. Goodman's conduct caused such distress. *Id.* (requiring appellant to alleged the harm suffered *as a result of* appellee's conduct).

Plaintiff further alleges that his "health care provider confirmed that Plaintiff has seen an increase in depression and anxiety as a result of the statements made by the Defendants about the Plaintiff, which was published throughout the community at large." Am. Compl. ¶ 174. However, Plaintiff already suffered from a "serious anxiety disorder." *Id.* ¶ 174. It is unclear from the Amended Complaint that his alleged "increase" in anxiety was at all severe. Am. Compl., Count I. Plaintiff also fails to present competent medical evidence supporting his claim, which is required in Pennsylvania at this stage. *Britt v. Chestnut Hill Coll.*, 632 A.2d 557, 561 (1993) (affirming trial court's grant of preliminary objections where Mr. Leon failed to present medical evidence); *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987) (same). Oddly, Plaintiff notes that these documents may be "confidentially provided to the Court"—effectively conceding that he willfully refuses to substantiate his claims. *See* Am. Compl. ¶ 174. Plaintiff has also refused to produce such documentation in discovery.

Plaintiff's claim should be dismissed on any of these bases alone, and without leave to amend a second time.

ii.     **Negligent Infliction of Emotional Distress.**

An action based on NIED is limited to four theories of recovery.  The Pennsylvania Supreme Court has held that:

> In order to recover, a plaintiff must prove one of four theories:
> (1) situations where the defendant owed the plaintiff a pre-existing
> contractual or fiduciary duty (the special relationship rule); (2) the plaintiff
> suffered a physical impact (the impact rule); (3) the plaintiff was in a 'zone
> of danger' and reasonably experienced a fear of immediate physical injury
> (the zone of danger rule); or (4) the plaintiff observed a tortious injury to
> a close relative (the bystander rule).

*Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 774 (2022).

Moreover, "absent a finding of negligence, the negligent infliction of emotional distress claim cannot survive."  *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000); *see also Jordan*, 276 A.3d at 774 (affirming trial court's dismissal based on preliminary objections where plaintiff failed to establish claim for negligence).  The Amended Complaint does not allege a special relationship nor does it allege that the Plaintiff observed tortious injury to a close relative.  *See generally*, Am. Compl.

The Plaintiff's NIED claim is nothing more than a copy and paste of his insufficient IIED claim. *See* Am. Compl., Counts I, and II.  Although the Amended Complaint fails to specify what theory of NIED the Plaintiff is alleging, it appears to allege either the physical impact rule or the zone of danger rule.  See Am. Compl., ¶ 181 (alleging that "Defendants have engaged in assault and battery directed to the Plaintiff.").  Because the Plaintiff's allegations of defamation do not fall under these theories, the Court need only examine whether he has stated a claim for NIED for Ms. Goodman's alleged assault (Count VI).  Plaintiff has failed to allege either the physical impact rule or the zone of danger rule with respect to Ms. Goodman because he did not allege Ms. Goodman subjected him to physical impact or fear of immediate physical injury.  Am. Compl., Count II.

28

Regardless of Plaintiff's theory of NIED, to recover for NIED in Pennsylvania, Plaintiff must also establish Ms. Goodman's negligence. *See Jordan*, 276 A.3d at 774 (dismissing claim for NIED where plaintiff could not show that defendants breached a duty they owed him); *Brezenski*, 755 A.2d at 45. To state a claim for negligence, "the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff and the plaintiff suffered an actual loss or damage." *Brezenski*, 755 A.2d at 40. *See also Ford v. Oliver*, 176 A.3d 891, 905 (2017). Plaintiff has failed to allege ***any*** of the four elements of negligence against Ms. Goodman

*First*, Plaintiff does not allege Ms. Goodman owed him any duty. *See Oliver*, 176 A.3d at 906 (affirming dismissal of negligence claim where plaintiff provided no legal basis for a duty owed to him by defendants); *See generally*, Am. Compl., Count II. *Second*, even if Plaintiff had alleged a duty, the Amended Complaint utterly fails to allege facts demonstrating that Ms. Goodman breached any duty. *Id.* Plaintiff's allegation that Ms. Goodman confided in someone about his abuse of her certainly cannot possibly establish breach of a duty under the facts of this case, where the truth of that issue cannot be relitigated.

*Third*, Plaintiff does not allege that Ms. Goodman caused him the requisite harm. "Recovery is available under the impact rule only where a plaintiff sustains bodily injuries... accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff..." *Jordan*, 276 A.3d at 774-75 (alterations in original) (internal quotation marks omitted). Plaintiff must further allege "*immediate and substantial* physical harm resulting from Defendant's negligence." *Hinchey v. Univ. of Pennsylvania Health Sys.*, 2013 WL 8596455, at *2 (Pa. Com. Pl. Apr. 24, 2013) (emphasis in original) (dismissing NIED claim).

The Amended Complaint fails to allege facts showing that Ms. Hanoch's alleged assault, or Ms. Goodman's alleged assault-by-proxy, caused Plaintiff any accompanying mental harm. In his separate

assault counts, Plaintiff alleges he suffered "emotional . . . harm" as a result of the assault, *see* Am. Compl. ¶ 221, but does not specify what emotional harm he experienced, much less that there was "immediate and substantial" accompanying physical harm.  *See, e.g.*, *Stock v. Braswell*, 2017 WL 3279059, at *8 (E.D. Pa. Aug. 2, 2017) (dismissing NIED claim, finding that allegations that plaintiff "was violently assaulted while an inmate of PVC Kintock, requiring hospitalization" did not demonstrate "immediate and substantial" physical harm).  If anything, Plaintiff's allegations of mental suffering relate only to his allegation that Ms. Goodman engaged in defamatory conduct, which is not a theory of NIED under which Plaintiff may recover, as explained *supra*.  *See* Am. Compl. ¶ 185, 187, 188.

For all of these reasons, Plaintiff's NIED claim should be dismissed, without leave to amend a second time.

### XIII.   The Amended Complaint Fails to State a Claim for Assault (Count VI)

Assault is "an act intended to put another in reasonable apprehension of an immediate battery, which succeeds in causing an apprehension of such a battery."  *D'Errico v. DeFazio*, 763 A.2d 424, 431 n.2 (Pa. Super. Ct. 2000) (quoting *Cucinotti, Appellant v. Ortmann*, 399 Pa. 26, 27, 159 A.2d 216 (Pa. 1960)).

The absurd allegation that Ms. Goodman assaulted Mr. Leon by-proxy through defamation sounds in no legal authority.  Plaintiff does not cite—and Ms. Goodman cannot find—any legal authority for the contention that a defamatory statement can bear the weight of an assault claim.  "Words in themselves, no matter how threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so."  *Cucinotti v*, 159 A.2d at 217; *Thorsen v. Kaufmann's Dep't Stores*, 55 Pa. D. & C.4th 565, 569 (Com. Pl. 2000) (same).  For an assault to arise, the actor making a threat must be in a position to carry out the threat immediately *and must take some affirmative action toward doing so*.  *Dice v. Johnson*, 711 F. Supp. 2d 340, 364 (M.D. Pa. 2010) (applying Pennsylvania law).

30

The plaintiff does not allege that Ms. Goodman threatened him or took any action at all which put him in reasonable apprehension of immediate battery.  Am. Compl., Count IV.  Plaintiff does not allege that Ms. Goodman's alleged defamation of him was done with intent to cause him harmful or offensive bodily contact, or with intent to cause him to be in reasonable and imminent apprehension of such contact.  *Id*.

Further, the basis for Plaintiff's frivolous assault claim against Ms. Hanoch in Count V is based upon his allegations that Ms. Hanoch's belief that Ms. Goodman required protection was unreasonable. *Id.*, at Count V.  In other words, Plaintiff's separate assault claims against Defendants are in bold conflict. Am. Compl., Count V, *compare with*, Am. Compl., Count VI.  He claims that Ms. Goodman's alleged defamation of him caused Ms. Hanoch to believe Ms. Goodman was in need of protection, and therefore to assault Plaintiff; yet, he also claims that Ms. Hanoch could not have reasonably believed Ms. Goodman was in need of protection.  *Id*.  Plaintiff's self-contradicting story need not be accepted as true by this Court.  *See Buonadonna v. Se. Delco Sch. Dist.*, No. CIV.A. 14-02708, 2015 WL 2365629, at *1 (E.D. Pa. May 18, 2015) (dismissing claims where "new averments in the amended complaint are an amalgam of legal conclusions couched as facts, factual contentions which contradict assertions in the complaint, and facts which do not do enough to raise the Plaintiffs' right to relief above the speculative level."). And finally, as discussed *supra*, Plaintiff is precluded from re-litigating the fact that he was actively abusing Ms. Goodman at the time of the alleged assault.  *See infra*, Argument of Preclusion.

Accordingly, the Plaintiff has failed to state a claim for assault as to Ms. Goodman, and, as this fact cannot be cured by amendment, his claim should be dismissed with prejudice.

## XIV.   Plaintiff's Claims are Time-Barred

While the FAC fails to plead any specific dates upon which Ms. Goodman allegedly made defamatory statements against Plaintiff, Plaintiff's several exhibits include ones which purport to support allegedly defamatory statements which are dated or occurred more than one year prior to Plaintiff's filing

of his original complaint.  *See* Am. Compl., Pl's Exs. D, G, H, and K.  Plaintiff's claims pursuant to these exhibits are time-barred.  42 Pa. C.S.A § 5523 (the statute of limitations for libel, slander, and invasion of privacy is one year); *see also Smith v. IMG Worldwide, Inc.*, 437 F. Supp. 2d 297, 303 (E.D. Pa. 2006) (noting one-year statute of limitations for defamation claims under Pennsylvania law); *Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 628 (W.D. Pa. 2014) (holding that the Pennsylvania statute of limitations bars any claims for defamation based on publications that occurred more than one year before the filing of the complaint).  Further, because all of Plaintiff's claims are based on these alleged defamatory statements, they are similarly subject to a one-year statute of limitations.  *Id.* at 630 ("Pennsylvania, by statute, sets the statute of limitations for all claims sounding in defamation or invasion of privacy at one year . . . . the same one-year limitations period extends to any other tort claim based on a harmful publication, no matter the label placed on the cause of action."); Am. Compl., Counts I-IV, VI.  A statute of limitations defense is properly considered on a motion to dismiss where it appears on the face of the complaint that the claims may be barred.  *Heater v. Kispeace*, No. CIV.A. 05-4545, 2005 WL 2456008, at *1 (E.D. Pa. Oct. 5, 2005).

## <u>CONCLUSION</u>

For any or all of the foregoing reasons, Ms. Goodman respectfully requests that this Court grant her Motion to Dismiss Plaintiff's Amended Complaint and enter an order substantially in the form attached hereto.

Dated: March 18, 2024

*/s/* **Daniel Katz**
Daniel Katz, Esquire
121 S. Broad Street
Suite 1300
Philadelphia, PA 19107
(267)655-4167
DannyWKatz@gmail.com

*Attorney for Defendant Goodman*