# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWIN LEÓN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:24-cv-01060-WB |
| NEHAMA HANOCH | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHEYENNE GOODMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO THE DEFENDANT, CHEYENNE GOODMAN'S, MOTION TO DISMISS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES

INTRODUCTION

PRELIMINARY STATEMENT

FACTUAL BACKGROUND

LEGAL STANDARD

ARGUMENT

I.      The State of Delaware Family Court Order(s), are not determinative of Plaintiff's Claims and should not be considered in determining the Defendant's Motion to Dismiss since they are not final and are currently under appeal.

II.     Plaintiff is not restricted from litigating facts and claims relating to the events that occurred involving Ms. Goodman on December 16-17, 2022.

III.    Plaintiff's Claims for Defamation (Count IV) and Slander per se (Count VII) are pled with sufficient factual specificity supporting legally recognized causes of actions.

    i.   The Second Amended Complaint avers sufficient defamatory statements made by Ms. Goodman.

    ii.  The Second Amended Complaint avers facts supporting elements of special harm.

    iii. No Judicial or Conditional Privilege exists for Ms. Goodman that restricts Plaintiff from presenting his claim(s) of defamation.

        a.   Judicial Privilege

        b.   Conditional Privilege

IV.     Plaintiff's Complaint pleads material facts supporting a claim for Invasion of Privacy (Count III).

V.      Plaintiff's Complaint pleads material facts supporting a Claim for IED (Count I) and NIED (Count II), and should not be dismissed

    i.   Intentional Infliction of Emotional Distress

        1.   Plaintiff describes Defendant's outrageous conduct.

        2.   Plaintiff describes Defendant's  requisite intent for IIED

        3.   Plaintiff pleads material facts describing how Defendant caused him severe distress

    ii.  Negligent Infliction of Emotional Distress

VI.     Plaintiff's Complaint pleads material facts supporting a claim for Assault (Count IV).

VII.    Plaintiff's claims are not time-barred

CONCLUSION

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*220 Partnership v. Philadelphia Electric Co*.
     650 A.2d 1094, 437 Pa. Super 650 Ps. Super. Ct. 1994

*Am. Future v. Better Bus. Bureau*
     592 Pa 66, 923 A.2d 389, Pa. 2007

*Anderson v. Bernhard Realty Sales Co., Inc*.
     329 A.2d 852, 230 Pa. Super 21 Pa. Super. Ct. 1974

*Ashcroft v. Iqbal*
     556 U.S. 662, 678 (2009)

*Balletta v. Spadoni*
     (Pa. Commw. Ct. 2012) No. 916 C.D. 2011

*Bell Atlantic Corp., v. Twombly*
     550 U.S. at 556 n.3

*Bochetta v. Gibson*
     580 Pa. 245, 860 A.2d 67 (Pa. 2004),

*Briggs v. SW Energy Prod. Co*.
     321CV520 MS Pa. Jan. 03, 2024

*Britt v. Chestnut Hill College*
     429 Pa. Sup. Ct. 263 (1993) 632 A.2d 557

*Burger v. Blair Medical Associates, Inc*.
     964 A.2d 374, 600 Pa. 194 Pa. 2009

*Butterfield v. Pennsylvania Board of Probation and Parole*
     No. 1030 CD 2010 Pa. Commw. Ct. Oct. 28, 2010.

*D'Errico v. DeFazio*
     763 A.2d 424 (Pa. Super. Ct. 2000)

*Cohen Seglias Pallas Greenhall Furman PC v. Cohen*
     402, 405, 121, (Pa. Commw. Ct. May 15, 2023)

*D.S., In Interest of,*
     622 A.2d 954, 424 Pa. Super. 350, Pa. Super. Ct. 1993

*Freudlich & Littman LLC v. Feirstein*
      157 A.3d 526 Pa. Super Ct. 2017

*Goldman v. Bennett*
      (Pa. Commw. Ct. 2023), January 13, 2023 (Opinion Not Reported) No. 417 C.D. 2021

*Gray v. Allen Huntzinger & Central Parking Systems, Inc.*
      147 A.3d 924 2016 PA Super. 194 (Pa. Super. Ct. 2016)

*Houk v. Mitchell*
      No. 10023 of 2013, 2014 WL 12746879

*In re Tower Air, Inc*.
      416 F.3d 229, 238 (3rd Cir. 2005)

*Kazatsky v. King David Memorial Park*
      515 Pa. 183 (1987), 527 A.2d 988

*Khalifah v. Allstate Prop. & Cas. Ins. Co*.,
      Civil Action 21-cv-04981 (E.D. Pa. Dec. 2, 2021)

*Meally v. City of Philadelphia*
      Civil Action 215677 ED Pa. Apr. 20, 2022

*Moore v. Cobb-Nettleton*
      889 A.2d 1262, Pa. Super. Ct. 2005

*Paves v. Corson*
      765 A.2d 1128 Pa. Super Ct. 2000

*Phillips v. Cty. of Allegheny*
      515 F.3d 224, 232 (3d Cir. 2008)

*Roma Concrete Corp. v. Pension Assocs*.,
      Civil Action No. 19-1123 (E.D. Pa. Aug. 6, 2019)

*Santiago v. Warminster Twp*.
      629 F.3d 121, 128 (3d Cir. 2010)

*Zuber v. Boscov's*
      871 F.3d 255, 258 (3d Cir. 2017)

## **STATUTES**

231 Pennsylvania Code §1007

42 Pennsylvania Consolidated Statute §5523(1)

42 Pennsylvania Consolidated Statute §5524(1)

Federal Rules of Civil Procedure, Rule 12(b)(6)

Federal Rules of Civil Procedure, Rule 15(a)(1)(B)

Pennsylvania Rule of Civil Procedure §1351

Delaware Family Court Rule 53.1(e)

Title 10 Delaware Code §915(d)(1)

Title 10 Delaware Code §1041(1)(b)

Title 10 Delaware Code §1041(1)(d)

Title 10 Delaware Code §1041(1)(h)

## **OTHER AUTHORITIES**

Restatement (Second) of Torts § 46(1)

Restatement (Second) of Torts §652(B)

Restatement (Second) of Torts §652(C)

Restatement (Second) of Torts §652(D)

Restatement (Second) of Torts §652(E)

## PRELIMINARY STATEMENT

Plaintiff, Edwin León, ("Plaintiff"),  files this Response in Opposition to Defendant,

Cheyenne Goodman's, ("Ms. Goodman" or "Defendant"), Motion to Dismiss the Plaintiff's

Second Amended Complaint.  As described in the Second Amended Complaint, Ms. Goodman

and Plaintiff were engaged in a consensual interpersonal relationship which included dating.

What is unclear is why Ms. Goodman kept the relationship a secret from her friends and

colleagues and ultimately published a clearly defamatory and slanderous story about the Plaintiff

stalking, harassing and hazing her at work.  It is also unclear why, when the existence of the

relationship was exposed to Ms. Goodman's friends and colleagues, she chose to expand on the

defamatory and slanderous statements about the Plaintiff and to this date has continued to utilize

the legal system to punish the Plaintiff who has done nothing more than refuse to allow his

character and good name to be besmirched by his former lover, Ms. Goodman, and his former

close friend, Nehama Hanoch ("Ms. Hanoch"), who is also a Defendant.

Ms. Goodman, in her extensive pleadings in the instant matter, both in Federal Court and

previously in the Court of Common Pleas of Philadelphia County, has repeatedly

mischaracterized the statements of various Courts, in an attempt to damage Plaintiff's character.

Additionally, in the State of Delaware Family Court, Ms. Goodman's pleadings have included

much of the Commissioner's opinion in an attempt to solidify her arguments in support of her

filings.  Further, Ms. Goodman continues to maintain factually and legally unsupported positions

as to the claims in Plaintiff's Second Amended Complaint.  Those properly pled claims are

permitted under the Federal Rules of Civil Procedure (*see*, Fed. R. Civ. P. § 15(a)(1)(B)) and

arose within the Statute of Limitations.  The Writ tolling any applicable statute of limitations was

filed in March of 2023, less than eight (8) months from what is the earliest possible act of

defamation made by Ms. Goodman, as more specifically pled in Plaintiff's Second Amended

Complaint.  Ms. Goodman rests the entirety of her Statute of Limitations argument on the date

when the Complaint was filed, rather than on the date of the Notice of the potential claims against

her by service of the Praecipe and Writ of Summons pursuant to the Rules of Civil Procedure in

the Commonwealth of Pennsylvania.  Here, Defendant shows her lack of understanding of the

applicable Rules in Pennsylvania that the Federal Courts shall follow when a matter was

originally initiated in state court.[1]

## FACTUAL BACKGROUND

Plaintiff and Defendants were employed at the law firm of Young, Conaway, Stargatt and

Taylor, LLP ("YCST") in 2022, and were participants with other friends who frequently

socialized together.  The Plaintiff and Ms. Goodman were engaged in a consensual interpersonal

dating relationship which had progressed to a sexual relationship.  Generally, the friends and

colleagues of Mr. León and Ms. Goodman were not aware of the relationship.  Plaintiff was

unaware that Ms. Goodman was defaming and slandering him to Ms. Hanoch.   Eventually Ms.

Goodman's fabrications about Mr. León included false statements about harassing and stalking

behavior.  As more specifically described in Plaintiff's Second Amended Complaint, these

allegations were patently false, and were published to the YCST community, the larger Delaware

legal community and the general public by both Ms. Goodman and Ms. Hanoch.

On December 16, 2022, a group of work colleagues from YCST and several friends and

partners met in the evening for dinner and socializing in Philadelphia.  The evening ended in the

early morning hours of December 17, 2022 when Plaintiff was assaulted by Ms. Hanoch, after

Ms. Goodman told Ms. Hanoch, through social media correspondence that she was attempting to

---

[1] *See*, 231 Pa. Code R 1007; Pennsylvania Rules of Civil Procedure § 1351; *Meally v. City of Philadelphia*, Civil Action 215677 ED Pa. Apr. 20, 2022.

get away from Mr. León.  In the early morning, after being driven home to Delaware by her friends, Ms. Goodman called the Plaintiff and asked him to stay on the line while she fell asleep. The next day, Ms. Goodman tried to make up with the Plaintiff and drove from her apartment located in a secure, doorman monitored building in Delaware to the Plaintiff's home in Pennsylvania, where she spent the entire afternoon and early evening hours with the Plaintiff.

The day after Ms. Goodman voluntarily spent the day with the Plaintiff, Ms. Goodman, Ms. Hanoch and several other YSCT employees met with senior management at YCST and published false and defamatory statements about what had transpired on December 16-17, 2022, and demanded that Plaintiff be denied access to YCST.  Additionally, Ms. Goodman filed a Complaint with the Plymouth Township police.  Subsequently, Plaintiff voluntarily submitted to and passed a polygraph test and the police declined to file charges against the Plaintiff.  Ms. Goodman then filed a Protection from Abuse order in the State of Delaware against Plaintiff. Throughout this time, Ms. Goodman and Ms. Hanoch continued to slander the Plaintiff while simultaneously publishing false and defamatory statements about the Plaintiff, as more specifically pled in Plaintiff's Second Amended Complaint, the publication of which have caused harm to the Plaintiff, his reputation and his future earning ability.

One such example included Ms. Goodman filing a Complaint with the New Jersey bar, stating that the Plaintiff's "acts of abuse" were taken in furtherance of a "scheme to fabricate evidence, witness tamper and coerce false testimony (via affidavit)."  Defendant Goodman has also made factually false statement(s), which Plaintiff specifically denies, about the Delaware State Family Court Commissioner's Opinion.  The Commissioner's Opinion does not state that the Plaintiff engaged in a scheme to fabricate evidence, witness tamper or coerce false testimony. *See*, Exhibit A of Ms. Goodman's Motion to Dismiss.  Specifically, the Commissioner stated only

that the Plaintiff "committed acts of abuse pursuant to 10 *Del*. C. §1041(1)(b), (d) and (h)."  10

*Del*. C. §1041(1)(b), (d) and (h) states in relevant part that:

> The following terms shall have the following meanings:
> (1) "Abuse" means conduct which constitutes any of the following: . . .
> b. Intentionally or recklessly placing or attempting to place another person in reasonable apprehension of physical injury or sexual offense to such person or another. . . .
> d. Engaging in a course of alarming or distressing conduct in a manner which is likely to cause fear or emotional distress or to provoke a violent or disorderly response, including conduct that is directed towards any companion animal or service animal. . . .
> h. Intentionally causing or attempting to cause an adult to be financially dependent by doing either or both of the following:
>> 1. Maintaining overwhelming control over the individual's financial resources, including withholding access to money or credit cards or forbidding attendance at school or employment without reasonable justification, and against the individual's will.
>> 2. Stealing or defrauding of money or assets, exploiting the victim's resources for personal gain, or withholding physical resources such as food, clothing, necessary medications, or shelter.

10 *Del*. C. §1041(1)(b), (d) and (h).  Nowhere in the above is there any mention of fabricating evidence, witness tampering or coercing false testimony.  However, Ms. Goodman extrapolates from the Commissioner's Order misleading and false conclusions about Plaintiff to suit her own interpretation of the findings, and then represents those interpretations to be fact to third-parties, with the intent to cause damage and harm to the Plaintiff and his ability to earn a living and practice law as a licensed attorney.[2]  This is but one example of the many ways in which Ms. Goodman sought to personally punish and harm the Plaintiff and an abuse and misuse of the litigation process through which Ms. Goodman attempts to wrongfully claim an absolute privilege

---

[2] Plaintiff believes and avers that immediately prior to the filing of the instant Motion to Dismiss, an individual acting on behalf of one of the Defendants contacted the Plaintiff's current employer and provided them with documents and information not in the record as of the date of the phone call, and encouraged them to terminate the employment of the Plaintiff.  As a result, Plaintiff was terminated for cause.  Once Discovery is permitted in the instant matter, the Plaintiff will subpoena the records of Plaintiff's previous employer in an attempt to determine who contacted the Plaintiff's employer and provided the information that at the time of the termination of Plaintiff's employment, was not yet a part of the public record.

for any and all actions she has taken in the instant matter.  There is no such privilege as a matter of law for Ms. Goodman's behavior.

As a result of Ms. Goodman and Ms. Hanoch's actions, the Plaintiff initiated litigation in the Philadelphia Court of Common Pleas, which was unilaterally moved to Federal Court by the joint action of Ms. Goodman and Ms. Hanoch.  As a result of the continuing defamatory and slanderous actions of Ms. Goodman and Ms. Hanoch, which continue to this day, the Plaintiff filed a Second Amended Complaint, including Counts for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Invasion of Privacy, Defamation, Assault and Slander *per se*.  Despite the clear authority to file an Amended Complaint as set forth in the Federal Rules of Civil Procedure (*see*, Fed. R. Civ. P. § 15(a)(1)(B)), Ms. Goodman attempts to object to this filing as one of the issues cited by Ms. Goodman with which to support her request for Dismiss the instant action.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide that, "a party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. §12(b)(6).  In order to prevail on a motion filed under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp*., 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Khalifah v. Allstate Prop. & Cas. Ins. Co*., civil action 21-cv-04981 (E.D. Pa. Dec. 2, 2021).  Further, the Court has held that "pleadings must include factual allegations to support

the legal claims asserted. *Iqbal*, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing

*Twombly*, 550 U.S. at 555); see also *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir.

2008) (citing *Twombly*, 550 U.S. at 556 n.3)." *Roma Concrete Corp. v. Pension Assocs.*, Civil

Action No. 19-1123 (E.D. Pa. Aug. 6, 2019) .

## I.      THE STATE OF DELAWARE FAMILY COURT ORDER IS NOT DETERMINATIVE OF PLAINTIFF'S CLAIMS AND SHOULD NOT BE CONSIDERED IN DETERMING THE DEFENDANT'S MOTION TO DISMISS SINCE THEY ARE NOT FINAL AND ARE CURRENTLY ON APPEAL.

Ms. Goodman argues that the Court should take judicial notice of the Delaware Court

Opinion/Order as argued since it is a determination of the "truth" of the instant matter.  This

argument fails as the current determination is <u>not</u> a final determination as the Commissioner's

Order is currently under appeal, and the Family Court Judge who will review the Commissioner's

Order will review the Order *de novo*. (*See*, 10 Del. C. 915(d)(1) and Delaware Family Court Rule

53.1(e)).  Specifically, 10 Del. C. 915(d)(1) states in relevant part that:

> (d) A Commissioner's order, including emergency ex parte orders, shall be an enforceable order of the Court.  (1) Any party, except a party in default of appearance before a Commissioner, may appeal a final order of a Commissioner to a judge of the Court by filing and serving written objections to such order, as provided by rules of the Court, within 30 days from the date of a Commissioner's order. A judge of the Court shall make a de novo determination of those portions of the Commissioner's order to which objection is made. A judge of the Court may accept, reject or modify in whole or in part the order of the Commissioner. The judge may also receive further evidence or recommit the matter to the Commissioner with instruction.

10 Del. C. 915(d)(1).  Additionally, Delaware Family Court Rule 53.1(e) provides that:

> Rule 53.1 - Appeals from Commissioners' Orders
> **(a)** An interim or final order of a commissioner may be appealed to a judge of the Court by any party, except a party in default of appearance before such commissioner. . . .**(e)** From an appeal of a commissioner's final order, the Court shall make a de novo determination of the matter (that is, the matter shall be

decided anew by a judge), based on the record below. Prior to determination of the matter, a party may request in writing that additional evidence be permitted to be offered. The Court shall only accept such additional evidence if it finds:

> **1)** that it is newly discovered evidence which by due diligence could not have been discovered in time to offer it before issuance of the commissioner's order or
>
> **2)** if the circumstances are such as would justify reopening the record in the interest of justice. If the Court determines that the additional evidence should be considered, it may remand the matter to the commissioner to hear additional evidence or the Court may hear and consider the additional evidence or the Court may conduct a de novo hearing.

Delaware Family Court Rule 53.1(e).

Ms. Goodman's argument also fails based on a review of applicable Pennsylvania case law discussing judicial notice.  Specifically, the Superior Court of Pennsylvania has clearly defined when a court may take Judicial Notice:  "A court may take judicial notice of **an indisputable adjudicative fact**. Commonwealth ex rel. Duff v. Keenan, 347 [424 Pa.Super. 356] Pa. 574, 33 A.2d 244 (1943)."  (*emphasis added*) *D.S., In Interest of*, 622 A,2d 954, 424 Pa. Super. 350, Pa. Super. Ct. 1993.  The Court went on to further explain that "[A] fact is considered indisputable if it "is so well established as to be a matter of common knowledge." Albert Appeal, 372 Pa. 13, 20, 92 A.2d 663, 666 (1952). See also Haber v. Monroe County Vo-Tech. School, 296 Pa.Super. 54, 60, 442 A.2d 292, 295-96 (1982), quoting Petro v. Kennedy Tp. Bd. Commissioners, 49 Pa.Cmwlth. 305, 311, 411 A.2d 849, 852 (1980) (judicial notice is appropriate if a fact is so well-known as not to require supporting evidence)." *Id*.  The Court went on to hold that, "[C]onversely, **a court cannot take judicial notice of a disputed question of fact**. Haber, supra." (*emphasis added*) *Id*.  The Court added that "judicial notice should not serve to deny the opposing party the chance to disprove the fact sought to be judicially noticed." *Id*.  It is clear that whether or not the Plaintiff engaged in acts of domestic violence against Ms. Goodman is a disputed question of fact, especially given that the Order of the Commissioner is currently under

appeal, and given that the review of the specific findings of the Commissioner will be a *de novo* review.

Further, the elements of the claimed transgression (i.e., domestic violence) is vastly different from the elements of the transgressions the Plaintiff claims in his Complaint (Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Invasion of Privacy, Defamation, Assault and Slander *per se*).  *See* also, *220 Partnership v. Philadelphia Electric Co*., 650 A.2d 1094, 437 Pa. Super 650 Ps. Super. Ct. 1994, where the Court stated that "[J]udicial notice is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proved is so well known that evidence in support thereof is unnecessary, but **should not be used to deprive an adverse party of the opportunity to disprove the fact**." (*emphasis added*) *220 Partnership v. Philadelphia Electric Co*., 650 A.2d 1094, 437 Pa. Super 650 Ps. Super. Ct. 1994.  The Court went on to state that ""[A] court may not ordinarily take judicial notice of the records in one case of another case, whether in another court or its own, even though the contents of those records may be known to the court." Naffah v. City Deposit Bank, 339 Pa. 157, 160, 13 A.2d 63, 64 (1940)."  *Id.*  Finally, the Court, in reviewing a request to take Judicial Notice of a finding in Bankruptcy Court, held that:

> A court, in ruling on a demurrer, should refrain from noticing any fact which is not literally indisputable and which the parties could not reasonably raise in further pleadings or on argument at trial." Comment, The Presently Expanding Concept of Judicial Notice, 13 Vill.L.Rev. 528, 536-537 (1968). [437 Pa.Super. 656] Id. at 275-276, 361 A.2d at 840-841. Therefore, review should be restricted to the facts alleged in the complaint, and a trial court should not take judicial notice of collateral facts. Chorba v. Davlisa Enterprises, Inc., supra 303 Pa.Super. at 500, 450 A.2d at 38.

*Id*. Therefore, it is clear that it would not be appropriate for the Court to take judicial notice of the findings of the Commissioner of the Delaware Family Court.

II.     **PLAINTIFF IS NOT PRECLUDED FROM LITIGATING OR RELITIGATING THE CLAIMS OF MS. GOODMAN AND THE EVENTS OF DECEMBER 16-17, 2022**

Ms. Goodman next attempts to argue that Plaintiff's Complaint must be dismissed due to a purported "unanswered affirmative defense" which Ms. Goodman fails to identify.  Ms. Goodman cites in support of her argument a partial statement from the 3rd Circuit Court opinion,  *In re Tower Air, Inc*., 416 F.3d 229, 238 (3rd Cir. 2005), "A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face[.]"  *In re Tower Air, Inc*., 416 F.3d 229, 238 (3rd Cir. 2005).  The full citation provides greater context.  Specifically, the Court held: "[G]enerally speaking, **we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6).** *See In re Adams Golf Inc. Sec. Litig.,* 381 F.3d 267, 277 (3d Cir.2004). A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however. *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994)." (*emphasis added*) *Id*.   In the *Tower* case, the unanswered affirmative defense was the business judgment rule, and the application of this affirmative defense as it relates to a claim for breach of fiduciary duty, specifically in Delaware Courts.  Here, Ms. Goodman fails to even identify the "unanswered affirmative defense" upon which she claims the instant matter should be dismissed.  Instead, Ms. Goodman attempts to detail the litigation in the Protection from Abuse ("PFA") action which was heard in the Delaware Family Court.  Here, it is assumed Ms. Goodman intends that the affirmative defense of res judicata should be considered, but fails to specifically make that argument, likely due to her understanding that applying the laws of Pennsylvania to the instant matter, her argument would fail.  See, *Briggs v. SW Energy Prod. Co*., 321CV520 MS Pa. Jan. 03, 2024, where the Court clearly stated that:

Pennsylvania law dictates that there are four conditions that must be met for *res judicata* to apply:

> To support a claim of res judicata the party asserting this defense must show a concurrence of four conditions: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Stevenson v. Silverman,* 417 Pa. 187,208 A.2d 786, *cert, denied,* 382 U.S. 833,86 S.Ct. 76, 15 L.Ed.2d 76 (1965). The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights. *Hochman v. Mortgage Finance Corp.,* 289 Pa. 260,137 A. 252 (1927). *Callery v. Mun. Auth. of Blythe Twp.,* 243 A.2d 385, 387 (Pa. 1968).

*Briggs v. SW Energy Prod. Co*., 321CV520 MS Pa. Jan. 03, 2024.

It is clear that the identity of the thing sued upon is different, as is the cause of action, from the Delaware PFA Action to the Complaint presently before the Court.  It is clear that the elements that must be proven for a Petitioner to prevail upon a request for a PFA are far different from the elements needed to be proven to prevail on any of the Plaintiff's claims, including Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Invasion of Privacy, Defamation, Assault and Slander *per se*.  Here, Ms. Goodman argues that Delaware preclusion rules would require that the findings of the Delaware Family Court Commissioner preclude any re-litigation of the claims of abuse, despite the fact that the Commissioner's Order is currently under appeal, and Ms. Goodman herself filed a *pro se* response to that appeal.

Considering the fact that the Plaintiff's Complaint includes counts for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Invasion of Privacy, Defamation, Assault and Slander *per se*, none of which are a re-litigation of the issues litigated in the Delaware Family Court by Ms. Goodman, her argument for dismissal should fail.  Further, in her Motion to Dismiss, Ms. Goodman cites to Delaware preclusion law, and states that "preclusion applies where: (1) the issue of fact decided in the prior adjudication is identical to the

15

one presented; (2) there is a final judgement on the merits; (3) the party against whom collateral estoppel is asserted is a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior adjudication." *See*, Ms. Goodman's Motion to Dismiss, page 15, paragraph 2.

First, the issues of fact decided by the Commissioner in the Delaware Family Court are not identical to the claims asserted by the Plaintiff in the Seconded Amended Complaint. It is clear the claim for a PFA is vastly different from the claims now asserted the Plaintiff.  Second, and as argued above, the Commissioner's Orders are not final adjudications.  The review of these Orders is *de novo* pursuant to Delaware law, as Ms. Goodman clearly is aware, as the Commissioner's Order is currently under appeal, to which Ms. Goodman filed *pro se* a response on or about April 24, 2024.  (*See*, 10 Del. C. 915(d)(1) and Delaware Family Court Rule 53.1(e)). Finally, given the different elements and proofs needed for each of the separate matters (the PFA versus the instant action), it is not plausible to claim that the Plaintiff has had a "full and fair opportunity to litigate the issue in the prior adjudication," when the issues litigated in the PFA action were in fact limited by their very definition.  There has clearly been no "full and fair opportunity to litigate" Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Invasion of Privacy, Defamation, Assault and Slander *per se* now asserted against Ms. Goodman, and as more specifically pled above and in Plaintiff's Second Amended Complaint.  As such, it is clear that it would not be appropriate for the Court to preclude the Plaintiff from litigating his specific claims, nor would it be appropriate for the Court to preclude the Plaintiff from litigation or even re-litigating the abuse claims and events of December 16-17, 2022.

### III. PLAINTIFF'S CLAIMS FOR DEFAMATION (COUNT IV) AND SLANDER PER SE (COUNT VII) ARE PLED WITH SUFFICIENT FACTUAL SPECIFICITY SUPPORTING LEGALLY RECOGNIZED CAUSES OF ACTIONS.

Pennsylvania Courts have long held that the elements of defamation are:

> In an action for defamation, the plaintiff must prove, if the issue is properly raised: 1) the defamatory character of the communication; 2) publication by the defendant; 3) its application to the plaintiff; 4) understanding by the recipient of its defamatory meaning; 5) understanding by the recipient of it as intended to be applied to plaintiff; 6) special harm to the plaintiff; 7) abuse of a conditionally privilege occasion. 42 Pa.C.S.A. § 8343(a); *Maier v. Maretti,* 448 Pa.Super. 276, 671 A.2d 701, 704 (1995), *appeal denied,* 548 Pa. 637, 694 A.2d 622 (1997). "**[I]t is the function of the court to determine whether the communication complained of is capable of a defamatory meaning.**" *Id.* (citation omitted). "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating with him." *Id.* (citation omitted). "**A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession**." *Id.* (citation omitted).

*(emphasis added) D'Errico v. DeFazio*, 763 A.2d 424 (Pa. Super. Ct. 2000).  Pennsylvania Courts have further defined defamatory conduct by holding that "[A] communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. MacElree." *Balletta v. Spadoni*, (Pa. Commw. Ct. 2012) No. 916 C.D. 2011.  As specifically pled in Plaintiff's Complaint, Plaintiff has lost friends and work colleagues as a result of the actions taken by Ms. Goodman and Ms. Hanoch, lost the ability to practice in Delaware, and has been prevented from scheduling a character and fitness interview with the Delaware Bar, despite passing the Delaware bar exam, as a result of the actions taken by Ms. Goodman and Ms. Hanoch.[3]  The actions of Ms. Hanoch and Ms. Goodman have caused the Plaintiff to lose the

---

[3] See footnote #1, above, for additional damaging actions taken by the Defendants in the instant matter.

ability to work for a Delaware firm in his chosen area of law, and forced the Plaintiff to accept a position at a reduced rate of pay, which he has subsequently lost as stated above.

As described in Plaintiff's Second Amended Complaint, Ms. Goodman repeatedly defamed the Plaintiff to Ms. Hanoch and others at YCST, as well as others in the legal community before the events of December 16-17, 2022 and subsequent to the events of December 16-17, 2022, continued to do.  Included in the Plaintiff's Second Amended Complaint are specific instances of these defamatory publications.  After the events of December 16-17, 2022, Ms. Goodman continued to defame the Plaintiff by stating he was a rapist, had hazed her, harassed her, stalked her and abused her, and then proceeded to defame him repeatedly by filing documents improperly in the Court of Common Pleas that had no relevance to the issue(s) before the Court, with the sole intent of disparaging his name and character.  Additionally, Ms. Goodman filed complaints with the bar of the State of New Jersey, claiming that the Plaintiff had been convicted of actions which the Delaware Family Court had no authority to determine, and in fact did not determine, as confirmed by the extensive record in the documents attached to Ms. Goodman's Motion to Dismiss.  *See*, Ms. Goodman's Motion to Dismiss, Exhibit A and Plaintiff's Second Amended Complaint, Exhibit Z.  Plaintiff has stated clear and specific instances of defamatory conduct, particularly in light of Pennsylvania's most  recent appellate court decision, which stated in relevant part that "[W]ith regard to the internet communications, however, the Superior Court determined "the requisite harm to a plaintiff's reputation" to support a defamation cause of action "occurs when an internet communication is read by a third party who the plaintiff knows personally and who understands the communication to be harmful to the plaintiff's reputation." *Id.* at 868 (citing *Gaetano*, 231 A.2d at 755-56)."  *Goldman v. Bennett*, (Pa. Commw. Ct. 2023), January 13, 2023 (Opinion Not Reported) No. 417 C.D. 2021.  Given the many colleagues and

work friends who have terminated contact with the Plaintiff and refused to speak with him after

being contacted by Ms. Goodman and Ms. Hanoch, it is clear that the Defendants have harmed

the reputation of the Plaintiff, and have caused "special harm" in the loss of the Plaintiff's ability

to be employed by a Delaware law firm as a result of being unable to schedule a character and

fitness interview in Delaware, and his reduction in pay as a result of these actions.  It is clear that

the Plaintiff has specifically supported his claims for defamation such that that Defendants

Motion to Dismiss should be denied.

     Turning next to Ms. Goodman's argument that the Plaintiff's Complaint fails to state a claim

for Slander *per se*, Ms. Goodman's citation to *Houk v. Mitchell*, No. 10023 of 2013, 2014 WL

12746879 is incomplete and not an accurate interpretation of the law.  Ms. Goodman's citation

states that slander *per se* **can** include defamatory publications that impute "(a) a criminal offense

(b) a loathsome disease (c) matter incompatible with his business trade, profession, or office or

(d) serious sexual misconduct."  *Houk v. Mitchell*, No. 10023 of 2013, 2014 WL 12746879.

These are not the only defamatory publications that can cause harm, and the Court clearly does

not limit a finding to only those elements.  In fact, the Courts explained that:

> Defamation, of which libel, slander, and invasion of privacy are methods, is the
> tort of detracting from a person's reputation, or injuring a person's character, fame,
> or reputation, by **false and malicious statements**. **A publication is defamatory if
> it tends to blacken a person's reputation or expose him to public hatred,
> contempt, or ridicule, or injure them in their business or profession**. In order
> to be actionable, the words must be untrue, unjustifiable, and injurious to the
> reputation of another. When communications tend to lower a person in the
> estimation of the community, deter third persons from associating with them, or
> adversely affect their fitness for the proper conduct of their lawful business or
> profession, they are deemed defamatory.

*(emphasis added) Cohen Seglias Pallas Greenhall Furman PC v. Cohen*, 402, 405, 121, (Pa.

Commw. Ct. May 15, 2023).[4]

The Court in *Houk* further defined the requirements of Slander *per se* as follows:

> It must be emphasized that a plaintiff asserting a claim for slander per se must prove general damages or actual harm caused by the publication. Walker, 430 Pa. Super. at 244, 634 A.2d at 250. The plaintiff in a slander per se case must establish general damages or, in other words, the plaintiff must establish proof of actual harm caused by the publication. Haltzman v. Brill, 29 Pa.D.&C 4th 356, 363–364 (Pa. Com. Pl. 1995) (citing Walker, 430 Pa. Super, at 244, 634 A.2d at 249–250). Hence, the plaintiff must prove that someone thought less of him or her because of the publication and a mere emotional response to the publication by the plaintiff is insufficient to establish general damages. Id., 29 Pa.D. & C 4th at 364.
> The Haltzman Court stated, "Pennsylvania no longer recognizes presumed damages in defamation cases, but instead requires a showing of 'general damages,' that is, 'proved, actual harm caused to the reputation of the person defamed.'" Id., 29 Pa.D. & C 4th at 365 (quoting Restatement (Second) of Torts § 621). "**Actual harm includes "impairment of reputation and standing in the community...personal humiliation, and mental anguish and suffering.**" Brinich, 757 A.2d at 397 (quoting Restatement (Second) of Torts § 621 comment b; Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).

*Id*.  As such, it is clear that Plaintiff's Second Amended Complaint clearly and specifically pleads

the fact necessary to maintain a claim of Slander *per se*.

> **i.    The Second Amended Complaint avers sufficient defamatory statements made by Ms. Goodman to support the Claim(s).**

Ms. Goodman next attempts to claim that the Plaintiff has not pled any defamatory

statements with specificity, despite the Plaintiff's Second Amended Complaint which included

over 26 exhibits and approximately 380 pages of documents attached to Plaintiff's Second

---

[4]Plaintiff has pled in the Second Amended Complaint that Ms. Goodman has in fact accused Plaintiff of committing a criminal offense of serious sexual misconduct, neither of which is true, as stated in the Commissioner's Order, (*See*, Exhibit A of Ms. Goodman's Motion to Dismiss).  Therefore, even if Ms. Goodman's citation of *Houk* was as restrictive as Ms. Goodman claims, Ms. Goodman has clearly engaged in the conduct she herself cites as being actionable under *Houk*.

Amended Complaint.  Further, Plaintiff has attached specific documents showing Ms. Goodman's defamatory statements and publications. Ms. Goodman has refused to provide fully unredacted copies of her communications with third parties in the PFA action and has refused to engage in discovery in the instant matter.

      **ii.**      **The Second Amended Complaint avers sufficient facts supporting elements of special harm.**

The Plaintiff has specifically pled special harm in his Second Amended Complaint. Plaintiff has included calculations of these damages in his submission of his Rule 26.a.1.Ai-iii *Initial Disclosures* to counsel for Ms. Goodman.  Plaintiff Second Amended Complaint includes facts supporting harm/damages as a direct result of Ms. Goodman's actions.  The Plaintiff has been precluded from even scheduling a character and fitness interview (a prerequisite to being admitted to practice in the State of Delaware), which prevents Plaintiff from obtaining a job at a top law firm, where Plaintiff would be able to maximize his earnings.  Additionally, Plaintiff believes and avers that immediately prior to the filing of the instant Motion to Dismiss, an individual acting on behalf of one of the Defendants contacted the Plaintiff's current employer and provided them with documents and information not in the record as of the date of the phone call, encouraging them to terminate the employment of the Plaintiff.  As a result, Plaintiff was terminated from his job.  Once Discovery is permitted in the instant matter, the Plaintiff will subpoena the records of Plaintiff's previous employer in an attempt to determine who contacted Plaintiff's employer and provided information that at the time of his termination, was not yet a part of the public record.

Finally, while Ms. Goodman would have this Court deny the Plaintiff a right to claim reimbursement of his attorney's fees as a result of his purported failure to demand them in the PFA action, it is clear that the Plaintiff has incurred attorney's fees for multiple matters as a result

of the specific actions of Ms. Goodman, including but not limited to having to hire a criminal

defense attorney in Pennsylvania as well as having to hire an ethics attorney to represent him in

New Jersey.  As a result, Plaintiff has clearly shown special harm as a result of the actions of Ms.

Goodman.

       **iii.**    **No Judicial or Conditional Privilege exists for Ms. Goodman that restricts Plaintiff from presenting his claim(s) of defamation**.

         **a.  Judicial Privilege**

      Plaintiff next attempts to dismiss Plaintiff's defamation claim as a result of her purported

judicial privilege.  Once again, Ms. Goodman cites to the *Tower* case, but as pled above, her

citations to the Tower case are incomplete and her analysis inaccurate.  As with her previous

pleadings, Ms. Goodman's broad assertions fail to accurately address the Plaintiff's pleadings.

Ms. Goodman seems to argue that as she chose to initiate the PFA action, any statement or

publication she can claim relates to the PFA is protected by judicial privilege, even those

statements made prior to the events of December 16-17, 2022 and including those statements and

publications made after the filing of the PFA to third-parties in different venues or matters.

Additionally, Ms. Goodman fails to acknowledge that the judicial privilege is very narrow in its'

application, and in fact is not all-encompassing.  Specifically, Pennsylvania Courts have held that

while the publication of information within a judicial proceeding may in fact be protected,

republishing those protected documents can result in a loss of the original privilege.  The Court

has dealt with this in numerous cases, including *Bochetta v. Gibson*, 580 Pa. 245, 860 A.2d 67

(Pa. 2004), where the Court provided an illustration of how this privilege can be lost.

> In applying the above principles from *Post* to the instant case, we initially note that
> Gibson's publication of the complaint to the trial court was clearly protected by the
> privilege as it was not only (1) issued as a regular part of the legal proceedings, but
> was also (2) pertinent and material to the proceedings. *See Greenberg v. Aetna Ins.*

*Co.,* 427 Pa. 511, 235 A.2d 576, 577-78 (1967) (allegations in answer to complaint were protected by judicial privilege). However, the fact that the privilege protects this first publication does not necessarily mean that it also protects Gibson's later act of republishing the complaint to Dudick. *See Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36, 41 n. 3 (1991) ("[E]ven an absolute privilege may be lost through overpublication.... In the case of the judicial privilege, overpublication may be found where a statement initially privileged because made in the regular course of judicial proceedings is later republished to another audience outside of the proceedings."); *Barto v. Felix,* 250 Pa.Super. 262, 378 A.2d 927, 930 (1977)

*Bochetta v. Gibson*, 580 Pa. 245, 860 A.2d 67 (Pa. 2004).  The Court has further expanded upon this holding and states:

> This Court has previously recognized that the policy underlying judicial privilege is to "leave reasonably unobstructed the paths which lead to the ascertainment of truth and to encourage witnesses with knowledge of facts relevant to judicial proceedings to give complete and unintimidated testimony." ***Moses***, 549 A.2d at 957 (citations and quotations omitted). However, individuals who bring lawsuits with malicious motive and lacking probable cause, or that use the legal process for an illegitimate end after a suit has been initiated, are not seeking the ascertainment of truth or to encourage candor from witnesses. Moreover, courts throughout this Commonwealth have recognized that parties should be held liable for bringing improper actions and exploiting the legal process. Finally, adequate safeguards exist to ensure that a bona fide litigant is not penalized for pursuing an action or defending itself.

*Freudlich & Littman LLC v. Feirstein*, 157 A.3d 526 Pa. Super Ct. 2017.  The Courts have not concluded that by initiating or participating in a legal proceeding, that any and all statements and publications made about or that in any way reference the legal proceeding is subsequently shielded by the judicial privilege, nor have the Courts held that submitting a statement to a bar association that contains material misrepresentations or documents from a separate litigation matter qualifies as a "judicial proceeding" subject to the purported privilege.  Additionally, and as previously pled, the publication of an item from prior litigation is not protected, especially when the published document is not material to the issue before the Court, as was the case in the

publication of statements and documents by Ms. Goodman in a discovery matter before the Court

of Common Pleas.  See, *Bochetta* , where the Court held

> However, the fact that the privilege protects this first publication does not
> necessarily mean that it also protects Gibson's later act of republishing the
> complaint to Dudick. *See Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36, 41
> n. 3 (1991) ("[E]ven an absolute privilege may be lost through overpublication....
> In the case of the judicial privilege, overpublication may be found where a
> statement initially privileged because made in the regular course of judicial
> proceedings is later republished to another audience outside of the proceedings.");
> *Barto v. Felix,* 250 Pa.Super. 262, 378 A.2d 927, 930 (1977) (although allegations
> in attorney's brief were protected by judicial privilege, attorney's remarks
> concerning contents of brief during press conference were not likewise protected
> by privilege).

*Bochetta v. Gibson*, 580 Pa. 245, 860 A.2d 67 (Pa. 2004).  As such, Plaintiff's claims are

supported by the facts and law and not subject to dismissal.

### b.  Conditional Privilege

Ms. Goodman next attempts to bootstrap her argument that the non-binding and currently

under appeal determination from the Delaware Family Court Commissioner somehow precludes

any discussion or litigation of the truth of Ms. Goodman's statements to YCST, and therefore

provides her a blanket conditional privilege.  Once again, Ms. Goodman's argument fails.  In fact,

it has not been proven that Ms. Goodman's statements to YCST were truthful when made, as no

discovery of those statements has been provided to date.  While Ms. Goodman alleges that malice

is a required element to defeat the conditional privilege, she erroneously claims the alleged

privilege protects her actions.  Pennsylvania Courts have held that in matters related to private

figures (and there is no question that the Plaintiff in the instant matter is a private figure as it

relates to Pennsylvania defamation law), negligence is all that is required to defeat any purported

conditional privilege.  *See*, *Am. Future v. Better Bus. Bureau*, 592 Pa 66, 923 A.2d 389, Pa. 2007,

the Court held:

> A unanimous panel of the Superior Court affirmed in a published opinion. While the panel acknowledged that **negligence may be sufficient to defeat a claim of conditional privilege where the plaintiff is a private figure and the speech does not involve a matter of public concern**, it indicated that statements on topics involving a recognized public interest are at the heart of the First Amendment's protections. *See* U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ."). Thus, the panel ultimately agreed with the trial court that malice was required to abuse the conditional privilege in the present case, because the Better Business Bureau's statements pertained to consumer complaints about Appellant's sales practices, which the panel deemed to touch upon a matter of public concern. *Cf. Unelko Corp. v. Rooney,* 912 F.2d 1049, 1056 (9th Cir.1990)

*(emphasis added) Am. Future v. Better Bus. Bureau*, 592 Pa 66, 923 A.2d 389, Pa. 2007.  Here, the statements made to the common employer about the Plaintiff by Ms. Goodman need only to be shown to have been made negligently in order to defeat her claim of conditional privilege.  Further, statements made for an improper purpose (such as those made to injure the Plaintiff and his standing within the small Delaware legal community, and the larger legal community in the tri-state area in which the Plaintiff practices) are clearly not protected by the conditional privilege.  *See*, *Moore v. Cobb-Nettleton*, 889 A.2d 1262, Pa. Super. Ct. 2005, where the Court stated that "[A]buse of a conditional privilege is indicated when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose. *Miketic v. Baron,* 675 A.2d at 329."  *Moore v. Cobb-Nettleton*, 889 A.2d 1262, Pa. Super. Ct. 2005.  As such, falsely accusing the Plaintiff of harassment, hazing and sexual assault to YCST is not in any way protected by a conditional privilege.

Additionally, statements to third parties about the Plaintiff are not eligible for a conditional privilege.  Pennsylvania Courts have acknowledged the potential for a conditional

privilege, but have clearly identified that whether that privilege has been abused is an issue of fact for the jury to determine.  See, *Am. Future v. Better Bus. Bureau*, 592 Pa 66, 923 A.2d 389, Pa. 2007, where "[T]he court additionally explained that, once it found that a conditional privilege applied, **whether such privilege was abused was a factual question for the jury**. *See generally Bargerstock v. Washington Greene Cmty. Action Corp.,* 397 Pa.Super. 403, 411, 580 A.2d 361, 364 (1990)." (*emphasis added*) *Am. Future v. Better Bus. Bureau*, 592 Pa 66, 923 A.2d 389, Pa. 2007.  As such, a conditional privilege does not protect Defendant Goodman from the claims asserted in Plaintiff's Second Amended Complaint and Plaintiff's claims should not be dismissed.

## IV.    PLAINTIFF'S COMPLAINT CLEARLY STATES A CLAIM FOR INVASION OF PRIVACY (COUNT III), AND SHOULD NOT BE DISMISSED

Pennsylvania Courts turn to the Restatement (Second) of Torts, §652 for the definition of the tort of invasion of privacy  There are four theories under which one can aver a claim for Invasion of Privacy.  Specifically, the Court  "referenced the Second Restatement of Torts, which enumerates four theories for invasion of privacy—unreasonable intrusion upon the seclusion of another, *see* RESTATEMENT (SECOND) OF TORTS § 652B, appropriation of the other's name or likeness, *see id.,* § 652C, unreasonable publicity given to another's private life, *see id.,* § 652D, and publicity that unreasonably places the other in a false light before the public, *see id.,* § 652E." *Burger v. Blair Medical Associates, Inc*., 964 A.2d 374, 600 Pa. 194 Pa. 2009.  The actions of Ms. Goodman, as pled in Plaintiff's Second Amended Complaint, clearly illustrate Plaintiff's claim for Invasion of Privacy, under the theories set forth in the Restatement, specifically §652(D) and §652(E).

Ms. Goodman argues that the non-binding and currently under appeal determination from the Delaware Family Court Commissioner precludes any discussion or litigation of the truth of

Ms. Goodman's defamatory statements, and therefore precludes the Plaintiff from bringing a claim for Invasion of Privacy under any theory.  Once again, Ms. Goodman's argument fails.  In fact, it has not been proven that all of Ms. Goodman's statements were truthful when made, as no full and complete discovery of those statements has been provided to date.

The statements made by Ms. Goodman about the specifics of Plaintiff's private life to YCST, made to Ms. Hanoch and other third parties prior to the filing of the PFA, are clear instances of Invasion of Privacy by Ms. Goodman about the Plaintiff.  Further, the statements made in an effort to portray Plaintiff in a false light, including Ms. Goodman's statements to Ms. Hanoch and to YCST as to the purported stalking and hazing of Ms. Goodman by the Plaintiff, which have been shown to be untrue, as well as statements made about Plaintiff after the events of December 16-17, 2022 to third-parties including those made to YCST, are further instances of Invasion of Privacy by Ms. Goodman invade the privacy of Plaintiff.   Further, and contrary to Ms. Goodman's claims, Pennsylvania Courts have held that "[W]e accepted that a libel claim primarily involves damage to reputation, **while in an action for invasion of privacy, the central harm to be redressed is mental suffering due to public exposure. However, we also noted that injury to reputation could be included in the damage assessment for a right of privacy case**. *See id.* at 247-48, 809 A.2d at 247."  (*emphasis added*) *Burger v. Blair Medical Associates, Inc.*, 964 A.2d 374, 600 Pa. 194 Pa. 2009.  Specifically, as a direct result of Ms. Goodman's actions, the Plaintiff has been precluded from even scheduling a character and fitness interview (a prerequisite to being admitted to practice in the State of Delaware), which prevents the Plaintiff from obtaining a job at a top law firm, where Plaintiff would be able to maximize his earnings. Mr. Leon has also suffered an exacerbation of his post-traumatic stress disorder ("PTSD").

Additionally, Plaintiff reasonably believes that immediately prior to the filing of the instant Motion to Dismiss, an individual acting on behalf of one of the Defendants contacted the Plaintiff's former employer and provided them with documents and information not in the record as of the date of the phone call, and encouraged them to terminate the employment of the Plaintiff. As a result, Plaintiff was terminated from his most recent and last position as an attorney. Ms. Goodman's actions as pled in Plaintiff's Second Amended Complaint were taken in order to injure the Plaintiff and his standing within the small Delaware legal community, and the larger legal community in the tri-state area in which the Plaintiff practices, and as such, clearly pleads sufficient material facts support the tort claim of *Invasion of Privacy*. Further, falsely accusing the Plaintiff of harassment, hazing and sexual assault to YCST and to the general public is not in any way defensible as having been truthfully made statements. Finally, the truthfulness of Ms. Goodman's statements has not been fully litigated or proven, despite Ms. Goodman's averments to the contrary. As such, it is clear that Plaintiff has sufficiently pled his claim for Invasion of Privacy.

**V.      PLAINTIFF'S COMPLAINT PLEADS SUFFICIENT MATERIAL FACTS SUPPORTING A CLAIM FOR INTENTIAONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT I) AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT II), AND SHOULD NOT BE DISMISSED**

> **i.      Intentional Infliction of Emotional Distress**
> **a.   Plaintiff clearly pleads outrageous conduct**

Pennsylvania Courts have long held that the tort of Intentional Infliction of Emotional Distress is characterized by "[T]he gravamen of the tort of [IIED] is outrageous conduct on the part of the tortfeasor." *Id.* at 991. Specifically, a plaintiff must prove that the defendant ""by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress." *Id.* quoting Restatement (Second) of Torts, § 46; *Hoy v. Angelone* , 456 Pa.Super. 596, 691 A.2d

476, 482 (1997)." *Gray v. Allen Huntzinger & Central Parking Systems, Inc.*, 147 A.3d 924 2016

PA Super. 194 (Pa. Super. Ct. 2016).  Pennsylvania Courts have further held that "[T]he tort of

intentional infliction of emotional distress, as described in Restatement (Second) of Torts § 46(1):

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional

distress to another is subject to liability for such emotional distress, and if bodily harm to the

other results from it, for such bodily harm. *Kazatsky v. King David Memorial Park,* 515 Pa. 183,

527 A.2d 988, 991 (1987)."  *Paves v. Corson*, 765 A.2d 1128 Pa. Super Ct. 2000.

Ms. Goodman argues that her actions, as more specifically pled in Plaintiff's Second

Amended Complaint, were not outrageous and therefore, Plaintiff's claim for IIED must be

dismissed.   In *Gray*, the jury found for the Plaintiff on a claim of intentional infliction of

emotional distress, based on the following fact pattern:

> At the jury trial before [the trial court], [Gray] presented evidence regarding an
> incident on April 19, 2011, at the CPS offices. [Gray] worked for CPS at that time
> and was told to report to the office of [Huntzinger], the Operations Manager for
> CPS at the Philadelphia Sports Complex. [Gray] testified that while in
> [Huntzinger's] office, [Huntzinger] first told [Gray] that he was suspended
> [pending an] investigation. After continuously questioning [Huntzinger] for
> reasons why he was being suspended, [Huntzinger] fired him and grabbed [Gray's]
> right arm forcefully to pull [Gray] towards [Huntzinger].[Gray] also testified that
> [Huntzinger] followed him into the hallway outside [Huntzinger's] office and
> bumped into him, although not causing any injury. Afterwards, [Gray] called 911,
> stating he was "very sick to my stomach and I called 911 because I wasn't feeling
> well. [The situation] made me sick and I got concerned." An ambulance arrived
> and took [Gray] to the hospital due to the situation elevating his Crohn's [d]isease.
> "The Crohn's is extremely painful. The elevation is due to many different things
> and one of them is being stress [sic] will cause swelling of the intestines and it's
> very, very painful." [Gray] also stated that the Crohn's flare-up did not occur until
> after [Huntzinger] grabbed him.  [Gray] testified that the incident made him feel
> humiliated and embarrassed in front of his co-workers. [Gray] also stated that even
> at the time of testimony, he felt threatened by the fact that an employer could treat
> him in this manner. On cross-examination, [Gray] stated that, prior to the incident,
> he had made numerous emergency room visits caused by his Crohn's disease.
> [Appellants], during their case-in-chief, presented evidence offered by
> [Huntzinger]. He testified that on the day of the incident in question, he met with
> [Gray] to discuss a customer service complaint made against [Gray]. [Huntzinger]

further testified that he never grabbed or touched [Gray], or threatened to grab or touch [Gray] during the meeting or at any time. [Huntzinger] also testified that after [Gray] left his office, he followed [Gray] into the hallway, walking two steps behind him when [Gray] stopped, took two steps back, bumped into [Huntzinger] (a "very minor" bump) and yelled "assault." [Appellants] also presented the testimony of Annemarie Williams, the Facility Manager for CPS's Wells Fargo Center location at the time of the incident. [Williams] was present during the entire meeting between [Gray] and [Huntzinger] and testified that at no time did [Huntzinger] grab, touch, or threaten to grab or touch [Gray]. [Williams] described [Gray's] demeanor during the meeting as loud, belligerent, and angry[,] whereas she described [Huntzinger] as calm and cool.  [Williams] also agreed with [Huntzinger's] testimony that after the meeting concluded, [Huntzinger] followed [Gray] into the hallway and lobby area, at which time [Gray] turned and "grazed" [Huntzinger].  Trial Court Opinion, 2/4/16, at 3-5 (citations to record omitted).

*Gray v. Allen Huntzinger & Central Parking Systems, Inc.*, 147 A.3d 924 2016 PA Super. 194 (Pa. Super. Ct. 2016).  The Court also discussed the requirement that, at the time of trial, the Plaintiff was required to present evidence from a medical expert in support of the injury to the Plaintiff.[5]  *Id.*  The Court has further defined outrageous conduct as "[T]he defendant's conduct as envisioned by the Restatement is such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" *Id.* (citing Restatement § 46(1), comment d)."  *Paves v. Corson*, 765 A.2d 1128 Pa. Super Ct. 2000.  It seems clear on its' face that taking action to defame the Plaintiff, and further attempting to have him disbarred and fired from his job, would be considered outrageous conduct under the Restatement (Second) of Torts, and given the standard set forth in *Gray*, where the firing of an employee and any subsequent physical interactions between the two caused the Plaintiff to suffer from a Crohn's flare-up, which the jury found rose to the level of outrageousness such that they found for the Plaintiff and awarded him damages.  As such, Ms. Goodman's actions as detailed above clearly meet the definition of "outrageous".

---

[5] As the Plaintiff in *Gray* did not present expert medical testimony in support of his claim for IIED <u>at the time of trial</u>, the jury verdict was overturned on appeal.

### b.  Plaintiff has pled sufficient material facts to support the claim and intent for IIED

Ms. Goodman next attempts to argue that the Plaintiff has failed to show either intentional or reckless actions by Ms. Goodman, and supports her argument by stating that her conduct cannot be deemed either intentional or reckless as all of her actions and conduct, as pled more specifically in Plaintiff's Second Amended Complaint, are precluded from review due to the Commissioner's Order.  This argument is ridiculous on its' face.  By way of example, only, Ms. Goodman seems to argue that Plaintiff is precluded from arguing that Ms. Goodman's months long campaign to smear him to Ms. Hanoch and their other YCST colleagues by making false claims of hazing and stalking is justified by the Commissioner's Order which found only that the Plaintiff placed Ms. Goodman in fear on December 16-17, 2022.  This argument is nonsensical, as the Plaintiff has properly pled both intentional and reckless actions taken by Ms. Goodman which have caused the Plaintiff's PTSD, which Ms. Goodman was at all times aware of, to be exacerbated as a result of Ms. Goodman's actions both before, during and after the events of December 16-17, 2022.

### c.  Plaintiff has clearly pled that Ms. Goodman caused him severe distress

Plaintiff  has pled in his Second Amended Complaint that he suffers from PTSD, which has been severely exacerbated by the actions of Ms. Goodman and Ms. Hanoch.  Plaintiff has explained that he required medical attention as a direct result of the actions of Ms. Goodman, unlike in *Britt v. Chestnut Hill College*, 429 Pa. Sup. Ct. 263 (1993) 632 A.2d 557, (which is incorrectly cited by Ms. Goodman as a finding against Mr. León, *see*, Ms. Goodman's Motion to Dismiss, page 31, second paragraph), where the Plaintiff failed to aver that he sought medical attention as a result of the actions complained about in Plaintiff's (Britt) Complaint.  The Court in

fact stated that "[I]n the present case, we agree with the trial court's conclusion that the facts, as set forth by Appellant in his Complaint, are insufficient to support his claim of intentional infliction of emotional distress. Furthermore, from our review of the Complaint, it is apparent that Appellant has failed to allege that Appellees' conduct caused him to seek medical treatment. Therefore, we affirm the trial court's order dismissing Appellant's claim for the intentional infliction of emotional distress." *Britt v. Chestnut Hill College*, 429 Pa. Sup. Ct. 263 (1993) 632 A.2d 557.  In the instant matter, Plaintiff has clearly pled that he has sought medical assistance as a result of the actions and conduct of Ms. Goodman.

Ms. Goodman also cites *Kazatsky v. King David Memorial Park*, 515 Pa. 183 (1987), 527 A.2d 988, and states simply "same" in her citation, which refers to her citation to *Britt*, as referenced above, wherein Ms. Goodman argues "(affirming trial court's grant of preliminary objections where Mr. León failed to present medical testimony)".  *See*, Ms. Goodman's Motion to Dismiss, page 31, second paragraph.  However, in *Kazatsky*, the claim for IIED was dismissed after the Defendants moved for a compulsory nonsuit when the Plaintiffs (the Kazatskys) rested their case in chief.  *Kazatsky v. King David Memorial Park*, 515 Pa. 183 (1987), 527 A.2d 988. That is very different from granting a Motion to Dismiss under rule 12(b)(6).  It is clear Plaintiff is not required to provide specific and detailed medical testimony at this stage of the pleadings, but Plaintiff has pled sufficient material facts of an increase in the need for medical treatment as a result of the Defendants' actions that support his claim, and Plaintiff's claims should be allowed to proceed.

### ii.   Negligent Infliction of Emotional Distress

Ms. Goodman correctly identified the requisite elements for a claim of Negligent Infliction of Emotional Distress, but fails in her argument that the Plaintiff has not pled any of the

requisite elements.  The impact rule and the zone of danger rule both apply in the instant action, as more clearly pled by Plaintiff in his Second Amended Complaint.  Specifically, after months of defamatory and untrue statements made by Ms. Goodman to Ms. Hanoch about Ms. Goodman's romantic partner, to whom it could be argued that she owed a duty of care, Ms. Goodman repeatedly lied to her friend about the Plaintiff on the evening of December 16-17, 2022, Ms. Goodman's lies caused Ms. Hanoch to cause the Plaintiff to suffer an impact by way of her assault and battery of the Plaintiff.  Further, Ms. Goodman, by falsely telling Ms. Hanoch that she was afraid of the Plaintiff and was running away from him, placed the Plaintiff in the zone of danger and caused the Plaintiff to experience fear of immediate physical injury, which in fact occurred when Ms. Hanoch assaulted the Plaintiff.  As such, Ms. Goodman's Motion to Dismiss Plaintiff's claims for Intentional Infliction of Emotional Distress must be denied.

## VI.   PLAINTIFF'S COMPLAINT PLEADS SUFFICIENT MATERIAL FACTS SUPPORTING A CLAIM FOR ASSAULT (COUNT IV), AND SHOULD NOT BE DISMISSED

Ms. Goodman next attempts to argue that Plaintiff's claim for Assault against Ms. Goodman must be dismissed, based solely on the fact that Ms. Goodman was not the person to assault the Plaintiff.  Once again, Ms. Goodman's argument fails.  After months of defamatory and untrue statements made by Ms. Goodman to Ms. Hanoch about Ms. Goodman's romantic partner, to whom it could be argued that she owed a duty of care, Ms. Goodman yet again repeatedly lied to her friend about the Plaintiff on the evening of December 16-17, 2022, and these lies resulted in Ms. Hanoch's assault of the Plaintiff, who suffered an impact by way of Ms. Hanoch's assault and battery.   Further, Ms. Goodman, by falsely telling Ms. Hanoch that she was afraid of the Plaintiff and was running away from him, placed the Plaintiff in harm's way and caused the Plaintiff to be assaulted by Ms. Hanoch.

Pennsylvania Courts have held that the tort of assault has a broader definition than that provided by the crime of assault. Specifically, the Court in *Butterfield v. Pennsylvania Board of Probation and Parole*, No. 1030 CD 2010 Pa. Commw. Ct. Oct. 28, 2010, stated

> On appeal, Petitioner contends that assaultive behavior is defined using the ordinary dictionary definition of assault, which was not met here because he had no physical encounter with Saadi and did nothing that would cause Saadi to have a reasonable apprehension of bodily harm.[3] While Petitioner is correct that if "assaultive behavior" is defined using the ordinary dictionary definition of "assault" his conduct would not constitute assaultive behavior, we have held that assaultive behavior is broader than the crime of assault.[4] *Jackson v. Pennsylvania Board of Probation and Parole,* 885 A.2d 598 (Pa. Cmwlth. 2005). We reached that conclusion because according to the Webster's Third New International Dictionary (1976), which we quoted with approval in *Moore v. Pennsylvania Board of Probation and Parole,* 505 A.2d 1366 (Pa. Cmwlth. 1986), "assaultive" is defined as "[i]nclined toward or disposed to commit assault."

*Butterfield v. Pennsylvania Board of Probation and Parole*, No. 1030 CD 2010 Pa. Commw. Ct. Oct. 28, 2010. Here, the Court held that "the Board credited Feliu's testimony that Petitioner said with regard to Saadi, "this is the kind of person if you see in the street, I'll shoot him in the head." This statement clearly shows that Petitioner, while not actually committing assault, was "inclined toward or disposed to" commit assault." *Id*. It should be clear that the behavior of Ms. Goodman, who spent months defaming the Plaintiff to colleagues and friends, and then telling one of those same friends (Ms. Hanoch) that she was trying to get away from the Plaintiff, constitutes behavior that is "inclined toward or disposed to" commit assault. There can be no other justification in Ms. Goodman's actions toward the Plaintiff, and in fact Ms. Goodman could easily have foreseen the resultant assault by Ms. Hanoch as a result of Ms. Goodman's actions. As such, Ms. Goodman's Motion to Dismiss Plaintiff's claims for Assault must be denied.

VII.   **PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED**

Ms. Goodman next makes a clearly erroneous argument that the Plaintiff's Second Amended Complaint is time-barred, despite the fact that the Writ which initiated the instant action, originally brought in state court (Philadelphia's Court of Common Pleas),  was filed in March of 2023, less than eight (8) months from what is the earliest possible act of defamation as by Ms. Goodman.  *See*, 231 Pa. Code §1007.  Ms. Goodman rests the entirety of her Statute of Limitations argument upon the date when the Complaint was filed, rather than on when she was first placed on Notice of the potential claims against her by the filing of the *pracepie* for Writ of Summons ("Writ").  It appears Ms. Goodman fails to understand and appreciate the rules relating to the statute of limitations within the state court system, which the Federal Courts are bound to follow when a matter was originally initiated in the state court system.[6]  Additionally, we note that the statute of limitations for an assault claim is in fact two years, not one.  *See*, 42 Pennsylvania Consolidated Statute §5524(1).

More specifically, Pennsylvania Courts permits the initiation of litigation by Writ as opposed to the filing of a Complaint.[7]  As such, the statute of limitations starts to run based on the date of the filing of the Writ and not the filing of the Complaint.  The filing of a Writ tolls the statute of limitation in the same manner as the filing of a complaint.  *See*, *Anderson v. Bernhard Realty Sales Co., Inc.*, 329 A.2d 852, 230 Pa. Super 21 Pa. Super. Ct. 1974, where the Court held:

> Rule 1007 of the Pennsylvania Rules of Civil Procedure states: 'An action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons . . ..' No further action of a plaintiff is required under Rule 1007 to commence an action. **The filing of a praecipe for a writ of summons is sufficient to toll the statute of limitations for an amount of time measured by the original statutory period** (in this case 2 years) irrespective of whether the prothonotary issues the writ or the sheriff serves it. Ehrhardt v. Costello, 437 Pa. 556, 264 A.2d 620 (1970).

---

[6] *See*, 231 Pa. Code R 1007; Pennsylvania Rules of Civil Procedure § 1351; *Meally v. City of Philadelphia*, Civil Action 215677 ED Pa. Apr. 20, 2022.
[7] *See*, 42 Pennsylvania Consolidated Statute §5524(1).

(emphasis added) *Anderson v. Bernhard Realty Sales Co., Inc*., 329 A.2d 852, 230 Pa. Super 21

Pa. Super. Ct. 1974.  Pennsylvania Courts have allowed the applicable statue of limitations to be

tolled from the date of the filing of the Writ, and not from the date of the action or the date of the

filing of the Complaint.  The Court has explained it clearly in their most recent holding, where

they state:

> Historically, this process meant that, so long as a writ of summons was issued or
> complaint was filed within the statute of limitations, the plaintiff could reissue the
> writ or reinstate the complaint as often as needed within "a period equivalent to
> that permitted by the applicable statute of limitations." *Lamp v. Heyman,* 366 A.2d
> 882, 885 (Pa. 1976). In other words, if a writ was issued or complaint filed on the
> last day of a two-year statute of limitations, the plaintiff could take another two
> years, continually reissuing the writ or complaint, before finally serving the
> defendant a full two years after the statute of limitations expired. *Gussom v.
> Teagle,* 247 A.3d 1046, 105455 (Pa. 2021).

*Meally v. City of Philadelphia*, Civil Action 215677 ED Pa. Apr. 20, 2022.  However, the

Court in *Meally* has modified this historic treatment.  Pennsylvania Courts now view the

tolling of the statute of limitations from the filing of the Writ, and give the Plaintiff the

same statute of limitations extension as was stated in *Anderson*, with the specific

exception for those who fail to provide notice of the filing of the Writ to the opposing

parties.  Specifically, the Court has stated that:

> Some litigants abused this grace period, keeping their complaints live well beyond
> the statute of limitations without ever attempting service. *See id.* at 1056; *Lamp,*
> 366 A.2d at 886. To prevent such abuse, the Pennsylvania Supreme Court now
> requires that for a writ to be reissued or the complaint reinstated outside the statute
> of limitations, the plaintiff must have engaged in a "good-faith effort" to
> "diligently and timely" serve the defendant before the writ or complaint expired.
> *Gussom,* 247 A.3d at 1057. Otherwise, "[i]t would be inherently unfair, as well as
> contrary to the purposes of statutes of limitations, to permit the limitation period to
> be tolled without the defendant being apprised that he might continue to be subject
> to liability." *Witherspoon v. City of Philadelphia,* 768 A.2d 1079, 1083 (Pa. 2001)
> (plurality).
> For a good faith effort, the plaintiff must have *actually* tried to put the defendant
> on notice of the suit. She cannot have just misplaced the writ or complaint and
> forgotten about it for a month. *See Farinacci v. Beaver Cnty. Indus. Dev. Auth.,*

511 A.2d 757, 759-60 (Pa. 1986). The service does not have to have been perfect, however, so long as the defendant had "actual notice" of the suit and was not "prejudiced" by the improper service. *McCreesh v. City of Philadelphia,* 888 A.2d 664, 666 (Pa. 2005). For example, if a plaintiff mails the writ, and the defendant's receptionist signs for it, that service should be enough to put the defendant on actual notice, even if the receptionist was not a proper recipient for the writ. *Id.* at 666-67.

*Id.*  In the instant matter, the Writ was filed by the Plaintiff, *pro se*, on March 31, 2023, three and a half (31/2) months after the events of December 16-17, 2022, and approximately six (6) months after Ms. Goodman began defaming the Plaintiff.  When the Writ was filed by the Plaintiff, the Plaintiff entered Ms. Goodman's personal email address into the system so that she would receive any and all Notices relating to this matter via Philadelphia's electronic filing system.  As such, Ms. Goodman received actual notice of the pending action against her when the Writ was filed. On September 25, 2023, counsel for the Plaintiff entered their appearance, and the Plaintiff withdrew his appearance as a *pro se* litigant.[8]  On September 29, 2023 the Writ was reissued and service was attempted.  On October 11, 2023, an Affidavit of no service was filed as to Ms. Hanoch and Ms. Goodman, at their Delaware addresses.  On October 24, 2023, an Affidavit of no service was filed as to Ms. Goodman, at her parent's address in Pennsylvania.  On November 1, 2023, the Plaintiff filed a Motion for Alternative Service, which was granted on November 16, 2023.  As such, it is clear that the Plaintiff placed Ms. Goodman on notice of the pending action by his original filing of the Writ, and any statue of limitations was tolled as of March 31, 2023, the filing date of the Writ.  As the Court in Anderson properly pointed out, "[W]e would like to add in closing that defendants still possess the remedy of Non pros as protection against a

---

[8]Upon information and belief, when there has been action or a deadline of some sort in this or any of the other actions in which the Plaintiff and Ms. Goodman are involved, Ms. Goodman has a pattern of behavior of reaching out to third-parties to file grievances or complaints.  Specifically, on September 28, 2023, three days after the entry of appearance of current counsel on behalf of the Plaintiff, Ms. Goodman filed a follow-up communication with the New Jersey Bar, seeking to have the Plaintiff disbarred in New Jersey, *see*, Exhibit Z to Plaintiff's Second Amended Complaint.

plaintiff's unreasonable delay in prosecuting an action. See Salay v. Braun, 427 Pa. 480, 235 A.2d 368 (1967)." *Anderson v. Bernhard Realty Sales Co., Inc.*, 329 A.2d 852, 230 Pa. Super 21 Pa. Super. Ct. 1974.  Clearly, Ms. Goodman was aware of this legal remedy, as she caused to be issued a Rule to File Complaint on or about November 28, 2023, and as a result, the Plaintiff filed his original Complaint on December 13, 2023.  Therefore, it is clear that the Plaintiff's claims are not barred by any Statute of Limitation as it relates to the claims against Ms. Goodman.

<u>**CONCLUSION**</u>

As a result of the foregoing arguments, the Plaintiff, Edwin León, respectfully requests that this Honorable Court and the trier of fact find judgment in his favor and Deny the Motion of the Defendant, Cheyenne Goodman, for Dismissal, and Order the Defendant, Cheyenne Goodman, to respond, without objection, to Plaintiff's Second Amended Complaint in the form of the Order attached hereto.

Respectfully submitted,

**PAX LEGAL, LLC**

Dated:  May 20, 2024          By: _____

Lida L. Bonner, Esq.
Neil M. Hilkert, Esq.
***Counsel for Plaintiff,***
Edwin León