IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EDWIN LEÓN,** | CIVIL ACTION |
| **Plaintiff,** | |
| v. | |
| **NEHAMA HANOCH, and CHEYENNE GOODMAN,** | NO. 24CV1060 |
| **Defendants.** | |

**MEMORANDUM OPINION**

Last summer, a Commissioner of the Delaware Family Court granted Defendant Cheyenne Goodman's petition for a Protection From Abuse order, concluding by a preponderance of the evidence that Plaintiff Edwin León had committed acts of abuse against her.  Defendants, Goodman and her friend, Nehama Hanoch, have each filed, pursuant to Federal Rule of Civil Procedure 12(b)(6), a Motion to Dismiss León's Complaint against them in which he seeks money damages alleging that: (1) they defamed him by falsely accusing him of abusive conduct; (2) their defamatory speech also constituted slander *per se*, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and invasion of privacy; and, (3) on one occasion, Goodman and Hanoch physically assaulted him.  But the proceedings of the Delaware Family Court are entitled to preclusive effect, and the issues decided in that matter foreclose all of León's claims against Goodman and most of his claims against Hanoch.  Accordingly, Goodman's Motion will be granted, and Hanoch's Motion will be granted in part and denied in part.

  **I.**  **FACTUAL BACKGROUND**[1]

---

[1] The following recitation is taken from the Second Amended Complaint, the well-pled allegations of which are

León, Goodman, and Hanoch are attorneys who were previously employed by the Delaware law firm Young, Conaway, Stargatt and Taylor, LLP ("Young, Conaway").  Beginning in the summer of 2022, when León and Goodman were studying for the bar exam, the two struck up a casual dating and sexual relationship.  Within a few months, however, things between them had begun to sour, and Goodman started telling her friends and colleagues, including Hanoch, that she was being stalked and harassed by León.

Matters came to a head that December, when León, Goodman, and Hanoch attended a social outing in Philadelphia with several Young, Conaway colleagues.  After a night of drinking, Goodman walked away from the bars, telling her friends that she was planning to order an Uber home.  León followed, as did Hanoch after Goodman texted that she was trying to "get away" from León.  Hanoch eventually overtook León, then repeatedly struck him while screaming that she would "fucking kill" him.  The two were eventually separated, and the parties dispersed.  Goodman, the Amended Complaint alleges, called León later that night to apologize for Hanoch's actions, promising to "make this right."  She visited León's home the following day, where he alleges the two engaged in consensual sex.

Notwithstanding these supposed promises to León, Goodman and Hanoch informed senior personnel at Young, Conaway that León had assaulted Goodman, and they filed a complaint alleging the same with the New Jersey state bar.  Goodman also filed a petition for a Protection from Abuse ("PFA") order in Delaware Family Court, which may be granted upon a finding of "abuse"—*i.e.*, that the respondent "[i]ntentionally or recklessly plac[ed] or attempt[ed] to place another person in reasonable apprehension of physical injury or sexual offense," or that he "[e]ngag[ed] in a course of alarming or distressing conduct in a manner which is likely to

---

accepted as true in this posture.  *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

cause fear or emotional distress or to provoke a violent or disorderly response." 10 Del. C. § 1041(1)(b), (d).

As permitted by state law, *see* 10 Del. C. § 915(c)(1), Goodman's petition was referred to a Commissioner of the Delaware Family Court, who conducted a four-day bench trial. At the conclusion of those proceedings, the Commissioner issued a 52-page order which included the following findings:

> Mr. León chased Ms. Goodman twice through Center City Philadelphia. Ms. Goodman contacted her friends for help. Mr. León faked a heart attack and asked her to call 911. Ms. Goodman repeatedly ran from Mr. León. He resumed his chase afterwards. Five witnesses saw Ms. Goodman on the ground, head between her legs, shaken, and struggling to breath. Her emotional distress was apparent. The next day, Mr. León coerced her into having oral sex with him after threatening to have criminal charges filed against Ms. Hanoch, threatening to file a lawsuit against Ms. Hanoch, and threatening to report Ms. Hanoch for professional discipline. Mr. León also threatened to damage Ms. Goodman's reputation by exposing their relationship to her coworkers. Mr. León pressured her to execute an affidavit. Mr. León pressured her to text her coworkers to, "Make it right." He gave her a deadline. Ms. Goodman broke down uncontrollably when asked if she had been raped that weekend in December 2022.

Based on these findings, the Commissioner concluded that León had committed acts of abuse and granted Goodman's PFA petition. León's appealed this order to a judge of the Delaware Family Court, *see* 10 Del. C. § 915(d)(1), which ultimately affirmed the order's findings in their entirety.

## II.     LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Document "integral to or explicitly relied upon in the complaint" may also be considered without converting a motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted and emphasis removed).

### III.   DISCUSSION

#### A.  Defamation and Related Claims

Pursuant to the Full Faith and Credit Act, federal courts must give state court decisions "the same preclusive effect in federal court they would be given in the courts of the rendering state," *Del. Riv. Port Auth. v. Frat. Ord. of Pol.*, 290 F.3d 567, 573 (3d Cir. 2002)—here, Delaware.[2] Under that state's doctrine of issue preclusion, parties may not relitigate factual

---

[2] When determining the preclusive effect of a state court judgment, "[a] federal court looks to the law *of the adjudicating state*." *Del. Riv. Port Auth.*, 290 F.3d at 573 (emphasis added). Thus, Delaware law governs the preclusive effect of an order issued by that state's Family Court.

issues where: "(1) a question of fact essential to the judgment (2) [was] litigated and (3) determined (4) by a valid and final judgment." *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999). This rule "is designed to provide repose and put a definite end to litigation . . . by preventing the relitigation of an issue previously decided." *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del. 1991).

All four factors necessary to invoke issue preclusion are present here. First, the Commissioner's factual findings were essential to his decision to issue the PFA order. Second, these facts were thoroughly litigated—as noted, the Commissioner held a four-day bench trial, which included direct and cross-examination of multiple witnesses, voluminous exhibits, and arguments by counsel. Third, the PFA order expressly identifies the facts "determined" by the commissioner. And fourth, the PFA order was "a valid and final judgment." Under Delaware law, "[a] Commissioner's order, including emergency ex parte orders, shall be an enforceable order of the Court." 10 Del. C. § 915(d). And León has now exercised his right to appeal this order to a judge of the Delaware Family Court, which approved the order's findings in their entirety. While León has the right to seek review of the PFA order by Delaware's Supreme Court, *see* 10 Del. C. § 1051(c), that potential appeal is irrelevant to the order's preclusive effect: "Delaware follows the majority rule that an appeal does not render a judgment non-final for purposes of res judicata or collateral estoppel." *PVP Aston, LLC v. Fin. Structures Ltd.*, 2023 WL 2728775, at *10 & n.110 (Del. Super. Mar. 31, 2023) (collecting cases).

León offers two arguments as to why the PFA proceedings are not entitled to preclusive effect, neither of which is persuasive. First, he states that "the issue of defamation and the additional torts were not decided with the Delaware Court's entry of the" PFA order. While true, this is entirely beside the point. Issue preclusion bars "relitigation of issues actually litigated and

5

determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit." *Lawlor v. Nat. Screen Serv. Corp.*, 349 U.S. 322, 326 (1955). It is thus of no moment that that the PFA proceedings did not specifically involve a claim for defamation; what matters is the Commissioner's finding that León abused Goodman, a finding that was necessary to his decision to grant her PFA petition. Second, León contends that he "was not able to litigate the claims set forth in the Second Amended Complaint at all, let alone fully or fairly in the Delaware Court PFA action." But again, issue preclusion concerns the prior adjudication of factual issues, not legal claims, and León offers no explanation for why the PFA proceedings failed to accord him an adequate opportunity to litigate the factual allegations against him.[3]

As Hanoch and Goodman correctly argue, the factual findings of the Commissioner's PFA order make short work of León's defamation claim. Defamation stems from a false statement of fact, and in Pennsylvania, a plaintiff's complaint must "on its face must specifically identify what allegedly defamatory statements were made by whom and to whom." *Smith v. Sch. Dist. of Phila.*, 112 F.Supp.2d 417, 429 (E.D. Pa. 2000). Here, the allegedly defamatory statements identified in the Second Amended Complaint fall into three general categories. First, León alleges that after their altercation in December 2022, Hanoch and Goodman falsely informed their employer that he had "engaged in inappropriate conduct toward Goodman." Second, he alleges that shortly thereafter, Goodman and Hanoch filed a police report and PFA petition which against pressed these false accusations. (Included in this category are León's allegations that Defendants continued to republish these statements by repeating them in various filings submitted in this matter.) And third, he alleges that Hanoch and Goodman filed a

---

[3] Indeed, as the PFA opinion notes, León filed his own PFA petition alleging abuse by Hanoch, which the Commissioner dismissed after concluding that his testimony was "utterly unbelievable," and that León's petition "could be considered a frivolous filing."

6

defamatory complaint with the New Jersey state bar which "included statements about Plaintiff's character that were false when made."

But the factual assertion at the core of each of these allegedly defamatory statements is that León had abused Goodman. And the PFA order found that this is exactly what happened. As explained, the Commissioner concluded Goodman and Hanoch's account of what transpired between them and León credible, that León's account was largely uncredible, and that León committed acts of abuse within the meaning of the Delaware Family Code. In other words, the Commissioner found that the statements that León maintains were defamatory were true. That finding is fatal to León's defamation claim since falsity is an essential element of the tort. "[D]efamatory words, even if defamatory per se, will not provide a basis for recovery where the words are true; truth is a complete and absolute defense to a civil action for defamation." *Pelagatti v. Cohen*, 536 A.2d 1337, 1345-46 (Pa. Super. 1987). Thus, because the findings of the PFA order establish that Goodman and Hanoch's allegedly defamatory statements were true, León's defamation claim fails. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 856 (3d Cir. 1994) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.").

Attempting to show otherwise, León argues that because the first and third categories of the allegedly defamatory statements (*i.e.*, those statements directed to León's employer and to the state bar) pre- and post-date the PFA proceedings, respectively, they are unaffected by the Commissioner's findings. To the contrary, when Defendants reported León's conduct to his employer and the state bar, their statements were either truthful (and thus non-defamatory) or not. And that precise question was litigated during the PFA proceedings, where the Commissioner concluded that León had assaulted Goodman. That finding bars any defamation

7

claim based on statements to that effect, regardless of when those statements were made. To the extent León believes that either Defendant made defamatory statements unrelated to his assaultive conduct towards Goodman, he fails to specifically identify them, as required by Pennsylvania law. *See Smith*, 112 F.Supp.2d at 429.

León's claim of slander *per se* fails for the same reason. In Pennsylvania, "[a] plaintiff may succeed in a claim for defamation absent proof of special harm where the spoken words constitute slander *per se*." *Clemente v. Espinosa*, 749 F.Supp. 672, 677 (E.D. Pa. 1990). Examples of slander include words imputing "criminal offense" and "serious sexual misconduct," and León alleges that Goodman and Hanoch's statements about him fall into these categories. Even if he is right about that, these slanderous statements must be false to give rise to tort liability. *See Elia v. Erie Ins. Exchange*, 634 A.2d 657, 660 (Pa. Super. 1993). And here, as explained, Goodman and Hanoch's statements were not.

The Second Amended Complaint also presses claims for IIED, NIED, and invasion of privacy. As a formal matter, these torts are separate causes of action with their own specific elements. But "[t]he Supreme Court has made it pellucid that a failed defamation claim cannot be recycled as a tort claim for negligent or intentional infliction of emotional distress." *Shay v. Walters*, 702 F.3d 76, 83 (1st Cir. 2012) (citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 56-57 (1988)). Here, the factual allegations underpinning León's claims for IIED, NIED, and invasion of privacy are precisely the same as the facts that serve as the basis for his defamation and assault claims—*i.e.*, allegations that "Defendants have engaged in defamatory conduct directed toward Plaintiff," and that "Defendants have engaged in assault and battery on the Plaintiff." Because these claims all "grow[] out of this same nucleus of operative facts that spawned h[is] defamation claim . . . it follows inexorably that the failure of the plaintiff's defamation claim

pretermits continued prosecution" of his claims for IIED, NIED, and invasion of privacy. *Id.*; *accord DeGroat v. Cooper*, 2014 WL 1922831, at *6 (D.N.J. May 14, 2014) (holding that where a plaintiff's defamation claim failed, "the negligent infliction of emotional distress claim premised on the same facts must also be dismissed").

León requests, in the event the Defendants' Motions are granted, that the dismissal be without prejudice to allow him to file a Third Amended Complaint. While the Federal Rules instruct that leave to amend should be given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and so "inadequate complaints should be dismissed without granting leave to amend only if amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002), "the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252-53 (3d Cir. 2007). León did not do so, and that failure "is fatal to a request for leave to amend." *Id.* at 252. And in any event, "[w]hile Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a mere request in [a brief in] opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493-94 (3d Cir. 2017) (quoting *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004)).

### B. Assault Claims

Alongside his claims of defamation, slander, and the like, León also alleges that both Goodman and Hanoch assaulted him during their December 2022 altercation. Under Pennsylvania law, "an assault occurs when one acts with the unprivileged intent to put another in

reasonable and immediate apprehension of a harmful or offensive conduct and which does cause such apprehension." *Proudfoot v. Williams*, 803 F.Supp. 1048, 1054 (E.D. Pa. 1992) (citing *Cucinotti v. Ortmann*, 159 A.2d 216 (Pa. 1960)); *accord* Restatement (Second) of Torts, § 21 (Am. L. Inst. 1965) ("An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.").

According to León, that is precisely what happened. "In the early morning hours of December 17, 2022," the Second Amended Complaint alleges, "Ms. Hanoch intentionally struck the Plaintiff multiple times . . . caus[ing] the Plaintiff mental and physical harm." Goodman, meanwhile, is alleged to share in responsibility for this assault by dint of her "repeated lies to Ms. Hanoch about Plaintiff." Specifically, León alleges that "[t]he assault by Ms. Hanoch [] occurred partially as a result of the defamatory statements made by Ms. Goodman about Plaintiff," making Goodman liable for assault.

To start with that latter 'assault-by-proxy' claim against Goodman, León's arguments are squarely foreclosed by precedent. Pennsylvania's Supreme Court has held that an assault is "*an act* intended to put another person in reasonable apprehension of an immediate battery." *Cucinotti*, 159 A.2d at 217 (emphasis in original). Thus, "[w]ords in themselves, no matter how threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so. . . . Threatening words alone are deemed insufficient in this jurisdiction to put a person in reasonable apprehension of physical injury or offensive touching." *Id.* In the Second Amended Complaint, the only allegations against Goodman associated with the alleged assaultive conduct are that she (allegedly) made

defamatory statements to Hanoch and other third parties.  Because these words alone are not assaultive, and León has not alleged anything more with respect to his assault claim against Goodman, that claim against her will be dismissed.

Disputing this, León cites to *Butterfield v. Pa. Board of Probation and Parole* for the proposition that statements can be assaultive when they show that someone is "[i]nclined toward or disposed to commit assault."  2010 WL 9511412, at *2 (Pa. Commw. Oct. 28, 2010).  But that case and those it cites to were concerned the meaning of the term "assaultive behavior" as used in Pennsylvania's parole statute, 37 Pa. C.S. § 63.4.  The Commonwealth Court gave no indication that the meaning of this statutory language is the same as the scope of the common law tort of assault.

León's assault claim against Hanoch is a different matter.  As explained, the Second Amended Complaint alleges that she physically struck him.  On its face, this allegation appears better categorized as the battery—"a harmful or offensive contact with the person of another," *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (citation omitted)—rather than an assault.  But at the motion to dismiss stage, a complaint must be construed in the light most favorable to the plaintiff.  *Fowler*, 578 F.3d at 210.  And so, although León does not specifically allege it, his Second Amended Complaint permits the inference that he saw Hanoch preparing to strike him, and that this observation placed him in reasonable apprehension of imminent physical contact.

In her motion to dismiss, Hanoch's sole argument for dismissing this claim is that like León's other claims against her, it is barred by issue preclusion.  Specifically, she correctly notes that Pennsylvania recognizes "defense of others" as a "complete defense[] to a claim of assault and battery."  *Garris v. Thompson*, 1997 WL 11308, at *2 (E.D. Pa. Jan. 10, 1997).  And she

argues that the applicability of this affirmative defense is clear from the face of the Second Amended Complaint, since the PFA order found that León's conduct was "likely to cause fear or emotional distress or to provide a violent or disorderly response." But defense of others, like self-defense, has both an objective and subjective element. The defendant must "believe[] that [s]he or another is in imminent danger of bodily harm," and that belief must be "reasonable." *Id.*; *accord Smith v. Lauritzen*, 356 F.2d 171, 176 (3d Cir. 1966) ("[T]he defender is privileged to respond only to a reasonable belief on his part that he is in imminent danger of bodily harm."). It is likely that the Commissioner's findings in the PFA order establish the objective element—*i.e.*, that someone in Hanoch's position could reasonably fear that León was about to harm Goodman. But the Commissioner did not make any findings about whether Hanoch herself held that subjective belief.[4] Thus, because both elements of the affirmative defense are not "apparent on the face of the complaint," *Wisniewski v. Fisher*, 857 F.2d 152, 157 (3d Cir. 2017), dismissal of León's assault claim on that basis against Hanoch is not warranted.

### IV. CONCLUSION

For the foregoing reasons, Goodman's Motion to Dismiss will be granted, and Hanoch's Motion to Dismiss will be granted in part and denied in part.

An appropriate order follows.

---

[4] To be clear, considerable evidence of that subjective believe was presented at the PHA hearing. For example, the Commissioner related how Emily Jones, another Young, Conaway associate who attended the December 2022 social outing, testified that "she heard Ms. Hanoch say, 'Stay away,' from Ms. Goodman." And Hanoch herself testified that prior to striking León, "she told a Philadelphia police officer that her friend as being sexually assaulted."

BY THE COURT:


/s/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**

13